Margaret Moore THURMOND and James Moore Thurmond, Plaintiffs–Respondents,

v.

Freida M. MOXLEY, Individually and as Successor Trustee, Lee Roy Chambers, Ronald E. Chambers, and Jackie R. Chambers, Defendants–Appellants.

No. 18995.

Missouri Court of Appeals, Southern District, Division Two.

June 14, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 6, 1994.

Application to Transfer Denied Aug. 15, 1994.

W. Edward Reeves, Ward & Reeves, Caruthersville, for plaintiffs-respondents.

Tom K. O'Loughlin II, O'Loughlin, O'Loughlin & McManaman, Cape Girardeau, for defendants-appellants.

PREWITT, Judge.

Plaintiffs filed a "Petition in Ejectment" seeking the recovery of 5.244 acres of land. Defendants answered, claiming the right to possession of the property. Following nonjury trial, judgment was entered in favor of plaintiffs for possession of the disputed land except for a small portion near a house which defendants claimed to own. Defendants appeal.

Review is under Rule 73.01(c). As that rule is interpreted, this court is to affirm the trial court's determination, unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *In re Marriage of Lafferty,* 788 S.W.2d 359, 361 (Mo.App.1990).

Due regard is given by an appellate court to the trial court's determination on the credibility of witnesses. Rule 73.01(c)(2). Here, however, credibility is not an issue. The question is which surveyor followed the procedures mandated in chapter 60, RSMo "Land Surveys".

At trial, and here, the issue is which of two surveys correctly (or perhaps more closely) determined the north-south center line of Section 21, Township 27 North, Range 16 East, in Mississippi County, Missouri. Defendants have record title to property west of the line and plaintiffs to land east of the line. Both surveys were conducted by registered land surveyors. Each surveyor purports to support his survey by previous surveys and

documents from the United States General Land Office of the original federal survey of the land.[1]

According to Martin Lucas, whose survey is relied on by plaintiffs, the federal government surveyed the area in 1839, but plats of it were not drawn from the survey notes until 1864. Lucas describes the section as "fractional" because of an "inaccessible lake" known as Big Lake which runs along part of the south boundary of the section and reduces the size of the south half.[2]

The north east-west line of Section 21 is described on the government plat as being regular, that is, 80 chains (5280 feet) across. The upper half of Section 21 is shown on the government plat as containing 320 acres, a regular half section, with each quarter in the north half containing 160 acres. The property in question is in both the north and the south half of Section 21, but ends well before the south line of the section. Thus, the lake and the reduction of the section has no effect upon the north-south center line, except perhaps making it somewhat more difficult to determine.[3]

Both surveyors started from the same point, which they agree is the location of a monument where the federal government established the northeast corner of Section 21. Both also agree upon the west line of the section, but differ slightly on the length of the north line of the section. Both found that the section is not 5280 feet along its north line. Lucas has it 5285.5 feet, and Robert Harrison who made his survey for defendants has the line 5287.64 feet.

Lucas testified in regard to the center of the north-south line that he "did not try to make a line.... just tried to reestablish what was of record" based on the location of the center of the section by a 1931 survey. Apparently, because of an iron pin noted in the 1931 survey, Lucas determined that the dividing line of the section is 2639.9 feet west of the northeast corner of the section (according to his survey plat), leaving the west portion of the section 2645.6 feet.[4]

Harrison placed the center of the north line halfway across the section as he measured it, making the east and west halves along the north line each 2643.82 feet. He found a "rebar 4.21 feet east" of the halfway point of the north line. This is .29 feet from where Lucas found the pipe on which he relied. Lucas testified that inside the pipe he found was an iron bar and he placed "a half-inch rebar on top of the center of the bar in the pipe to bring it up closer to the surface of the road." Harrison chose to disregard this marker because it was not in the center of the section as he determined it.[5]

Harrison located the center of the north line of the section by first finding the corners of the section and then set the center line so that the quarters, except for those along Big Lake, were "proportionately equal". Harrison acknowledged that he and Lucas agreed on the north line and the west line of the section.[6]

Among defendants' contentions is the assertion that the Lucas survey should be re-

---

1. As defendants' present counsel noted in defendants' brief the transcript is often unclear because in referring to the various surveys the witnesses discuss such things as "this pipe" or "this corner" or "this line" without explaining which one. Nevertheless, we believe we understand the gist of each surveyor's testimony.

2. The government plat shows the Southeast Quarter of the Southeast Quarter and the Southwest Quarter of the Southeast Quarter as containing 33 acres. The Southeast Quarter of the Southwest Quarter is shown as having 39.13 acres. All other quarter sections of Section 21 are regular (40 acres).

3. Commencing in the Southeast Quarter of the Southwest Quarter and running East the south section line is irregular following a "meander line" along the shore of Big Lake.

4. The transcript of Lucas' testimony indicates that he went west 2639.8 feet from the Northeast corner of Section 21 and found "this pipe" thirty inches below the state highway (apparently State Route O). With one-tenth of a foot variation, we believe we located the pipe as marked on his survey plat.

5. Defendants' initial brief as appellants contains an appendix which includes what purports to be a copy of Harrison's survey admitted into evidence. However, it shows he "found rebar 4.21' West". In Harrison's testimony and in the plat of his survey, received in evidence as defendants' Exhibit B, the rebar was "found ... 4.21' East".

6. We find no explanation in the record as to how, in this "flat area", if the surveyors agreed on the north line of the section, their measurements of it and points along it varied.

jected because it failed to comply with 10 CSR 30–2.010 "Minimum Standards for Property Boundary Surveys" adopted by the Division of Geology and Land Survey, Missouri Department of Natural Resources. As noted in those regulations, the Department of Natural Resources is authorized by § 60.-510(7), RSMo 1986, to prescribe "advisory regulations designed to assist in uniform and professional surveying methods and standards in this state".

■ By being "advisory" the regulations are not mandatory, and thus provide no basis for having the survey rejected. "Advisory" means "[c]ounseling, suggesting, or advising, but not imperative or conclusive." BLACK'S LAW DICTIONARY 54 (6th ed.1990). *See also Alaska Public Easement Defense Fund v. Andrus,* 435 F.Supp. 664, 673 (D.Alaska 1977) ("advisory" indicates no binding power).

■ At the time of trial and at the time his survey was made, Lucas was the county surveyor of Mississippi County. Although at one time cases stated that surveys of the county surveyor are prima facie correct, due to statutory changes since those cases, a county surveyor's survey is not entitled to any presumption but is considered the same as that of any registered land surveyor. *Enderle v. Robert,* 863 S.W.2d 692, 693–694 (Mo.App.1993).

■ The next contention of defendants discussed is that Harrison, and not Lucas correctly followed chapter 60, RSMo "Land Surveys". By whom and when the pipe relied on by Lucas was placed there, the record does not show. As we read the survey notes of L.T. Berthe who made the 1931 survey, he did not put it there but located it in his survey. There is no indication in the record

that the pipe was placed there by the United States public land survey. Section 60.305, RSMo Supp.1993, requires that if the monument was placed there as a part of the federal survey or if that was the location as established by the survey, then erroneous or not, it cannot be changed. That section is set forth marginally.[7]

The result turns on whether the north corner dividing the east and west halves of the section is a "lost corner". That is "a corner whose position cannot be determined, beyond reasonable doubt, either from traces of the original marks or from acceptable evidence or testimony that bears upon the original position". See § 60.301(3), RSMo Supp.1993.[8]

■ If a corner is "lost", then it is to be reestablished in accordance with § 60.315, RSMo Supp.1993. This requires that discrepancies between the new measurements and the measurements shown on the government plat not affect any existent corners, but differences be distributed proportionately within the intervals along the line between the corners. This is the procedure Harrison said he followed. Lucas did not because he relied upon the pipe found by the Berthe 1931 survey.

The record does not indicate that the pipe Berthe found was placed there due to traces from markings or monuments of the original survey. The only evidence or testimony that bears upon its position was Berthe's survey showing he found the pipe 2640 feet from the northeast corner of the section. This was either one or two tenths of a foot more than Lucas went to find it.

Assuming that Berthe, Harrison and Lucas are correct as to the northeast corner and that Lucas and Harrison are correct as to the west line, it seems unusual that the quarters

7. **60.305. Resurvey of United States land survey—rules.**—In the resurvey of the lands of the United States public land survey, the surveyor shall observe the following rules:

(1) The boundaries of the United States public land survey in Missouri are unchangeable;

(2) The original township, section, quarter-section and other corners established by the original government survey must stand as the true corners which they were intended to represent, regardless of the location indicated by the field notes and plat;

(3) These corners must be restored at the identical spot where the original corner was located by the government survey, when this can be determined;

(4) When this cannot be done, the corner is said to be lost and it must be reestablished in accordance with the provisions of this chapter.

8. "Corners of the United States public land survey" include "the township corner, the section corner, the quarter-section corner, grant corner and meander corner". § 60.301(1), RSMo Supp.1993.

of a section would be divided so far from the true center. Defendants are also supported in relying on Harrison's survey by a fence line which for many years apparently has divided the parties' use of the land. This fence runs along what Harrison found to be the line dividing the east and west halves of the section.

The quarter section corner along the north line was "lost" because there were no traces to determine the original corner and no acceptable evidence or testimony that established its original position. Therefore, the corner was to be reestablished according to proportional measurement as provided in §§ 60.315 and 60.301(7). This is the procedure Harrison purported to follow and under these circumstances he was correct in doing so.

The judgment is reversed and the cause remanded with directions that the trial court set aside its original judgment and enter judgment establishing the line between the parties' property as it was determined by the survey of Robert M. Harrison (defendants' exhibit B).

FLANIGAN, P.J., and GARRISON, J., concur.