Peter HALLAM, Plaintiff–Appellee,

v.

**CITY OF COLORADO SPRINGS,
a municipal corporation,
Defendant–Appellant.**

No. 94CA1781.

Colorado Court of Appeals,
Div. I.

Aug. 24, 1995.

Rehearing Denied Oct. 5, 1995.

Certiorari Denied April 15, 1996.

Cross, Gaddis, Kin, Herd & Kelly, P.C., Thomas J. Herd, Colorado Springs, for plaintiff-appellee.

James G. Colvin, II, City Attorney, Thomas J. Marrese, Senior Litigation Attorney, Office of the City Attorney, Colorado Springs, for defendant-appellant.

Opinion by Judge TAUBMAN.

In this appeal raising questions of sovereign immunity, defendant, the City of Colorado Springs (City), appeals from the trial court's denial of its motion to dismiss the negligence claim filed by plaintiff, Peter Hallam, for lack of subject matter jurisdiction. We affirm.

Hallam was injured when he struck a dirt embankment at the end of a road at night. His complaint alleged that the City was negligent in failing properly to maintain barricades, which he alleged were lying down behind the dirt embankment, hidden from his view, at the time of the accident.

The City moved to dismiss the complaint under C.R.C.P. 12(b)(1), asserting that the barricades were "traffic markings," and that, therefore, Hallam's claim was barred by provisions of Colorado's Governmental Immunity Act, § 24–10–101, et seq., C.R.S. (1988 Repl.Vol. 10A) (GIA), insulating governmental entities from liability for claims based on the lack of traffic signs, signals, or markings.

Conversely, Hallam contended that the barricades were traffic safety devices, but not traffic markings, and thus not subject to the GIA. He also asserted that the City's failure to maintain the barricades properly and its maintenance of the dirt embankment on the roadway created dangerous conditions that physically interfered with the movement of traffic.

At a hearing on the motion to dismiss, Hallam testified, without contradiction, as follows. As he crossed an intersection while driving east on a street in Colorado Springs late at night, Hallam saw a car with its headlights on on the opposite side of the road and assumed it had come from the east. Immediately thereafter, Hallam's car hit what he later discovered to be a dirt embankment, and as a result he suffered serious disabling injuries. He also presented uncontradicted evidence that no visible barricades marked the end of the road in front of the embankment, but that he later discovered that the barricades intended for that purpose were lying down behind the embankment.

Experts on traffic accident reconstruction and highway design and safety testified for Hallam and the City, presenting conflicting testimony as to whether the barricades were a traffic marking and as to whether either the absence of visible barricades or the dirt embankment itself constituted a dangerous condition for travel on the roadway.

Following the evidentiary hearing, the trial court found that the barricades were a traffic safety device and did not constitute traffic markings. It also found that the supine barricades and the dirt embankment were dangerous conditions which physically interfered with the movement of traffic on a public highway. Therefore, the trial court found that the City was not immune from liability and denied its motion to dismiss.

## I.

The City first contends the trial court erred in ruling the barricade was not a traffic marking. We disagree.

Initially, we note that immunity created by the GIA is in derogation of the common law and therefore must be strictly construed. See Bertrand v. Board of County Commissioners, 872 P.2d 223 (Colo.1994). One of the basic purposes of the GIA is to permit a person to seek redress for personal injuries caused by a public entity. See State v. Moldovan, 842 P.2d 220 (Colo.1992).

The issue of sovereign immunity is one of subject matter jurisdiction, and, under C.R.C.P. 12(b)(1), the plaintiff has the burden to prove jurisdiction. Further, appellate review of a trial court's factual findings on sovereign immunity issues under the GIA is to be conducted under a highly deferential, clearly erroneous standard. Trinity Broadcasting of Denver, Inc. v. City of Westminster, 848 P.2d 916 (Colo.1993); Cline v. Rabson, 862 P.2d 1035 (Colo.App.1993).

Section 24–10–106(1)(d), C.R.S. (1994 Cum. Supp.) of the GIA states in relevant part that:

> Sovereign immunity is waived by a public entity in an action for injuries resulting from:
>
> .     .     .     .     .
>
> A dangerous condition of a public highway ... which physically interferes with the movement of traffic on the paved portion, if paved, or on the portion customarily used for travel by motor vehicles, if unpaved, of any public highway.... As used in this section, the phrase 'physically interferes with the movement of traffic,' shall not include traffic signs, signals, or markings, or the lack thereof....

Section 24–10–103, C.R.S. (1994 Cum. Supp.) of the Act defines a "dangerous condition" as:

> a physical condition of a facility or the use thereof which constitutes an unreasonable risk to the health and safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility.

In State v. Moldovan, supra, the supreme court held that, exclusive of the "traffic signs, signals, or markings, or the lack thereof" expressly set forth in § 24–10–106(1)(d), an improperly maintained traffic safety device that is an integral part of a state highway system may constitute a dangerous condition on the highway that physically interferes with the movement of traffic on the paved portion of the highway and, thus, may be the basis of a tort claim against the public entity responsible for maintaining the device. There, the court found that the state was not

immune from suit for its alleged negligent failure to maintain or repair a right-of-way fence.

In *Schlitters v. State,* 787 P.2d 656 (Colo. App.1989), a division of this court held that a dangerous condition may exist if the public entity fails to maintain a roadside so as to avoid the presence of an obstruction—there, falling boulders—on the travelled portion of the highway. *See also Belfiore v. State Department of Highways,* 847 P.2d 244 (Colo. App.1993) (GIA does not bar liability for alleged negligent failure to maintain and safeguard the highway).

The GIA does not define "traffic markings," and thus, we are presented with a matter of statutory construction that is a question of law. *See Bloomer v. Board of County Commissioners,* 799 P.2d 942 (Colo. 1990).

▮▮ Our primary goal in interpreting a statute is to determine and give effect to the intent of the General Assembly. *Bertrand v. Board of County Commissioners, supra.* And, to effect such intent, statutory terms should be given effect according to their plain and ordinary meaning.

If a statute is ambiguous, a court may consider a variety of factors, including the consequences of a particular construction, the legislative declaration or purpose, and the administrative construction of the statute. *See* § 2–4–203(1), C.R.S. (1980 Repl.Vol. 1B).

Here, no evidence was presented or argued to the trial court concerning the plain and ordinary meaning of the term "traffic markings." However, the City introduced the definition of "marking" from *Webster's Ninth New Collegiate Dictionary* as an "arrangement, pattern, or disposition of marks," and a definition of the same word from *Webster's Encyclopedic Unabridged Dictionary of the English Language,* as "a mark, or a number or pattern of marks." In our view, these definitions do not shed light on the plain and ordinary meaning of "traffic markings," since they do not concern traffic regulation in any way. In addition, our independent review of dictionary definitions does not disclose any separate definition for "traffic

markings" or any traffic-related definition of "marking."

▮ Here, we note that there is a definition of "markings" in § 42–1–102(51), C.R.S. (1994 Cum.Supp.), part of Colorado's Uniform Motor Vehicle Law. However, because the interpretation of one statute by reference to an unrelated statute is an unreliable means of ascertaining legislative intent, we do not find that definition controlling here. *See Bertrand v. Board of County Commissioners, supra.*

▮ Hence, the definition of "traffic marking" appears to be ambiguous, and we must look beyond the bare meaning of the words. *See* § 2–4–203(1), C.R.S. (1980 Repl.Vol. 1B).

Here, Hallam's expert testified as to the definition of "traffic markings" based in part on his review of the Manual on Uniform Traffic Control Devices. He stated that that manual has been adopted by the state of Colorado, and based upon his review of it, he stated his opinion that a barricade was not a traffic marking but was a traffic control device. Additionally, one of the City's expert witnesses conceded that a barricade was not a pavement marking, a curb marking, nor an object marking within the definition of the Manual on Uniform Traffic Control Devices. Based upon this evidence, in part, the trial court concluded that a barricade was not a traffic marking.

Since the Manual on Uniform Traffic Control Devices has been adopted by the state of Colorado, we conclude that the evidence presented at the evidentiary hearing supports the trial court's conclusion that a barricade is not a traffic marking. This conclusion is consistent with the principle noted above that a legislative grant of sovereign immunity must be strictly construed. Thus, if the General Assembly wishes to provide for sovereign immunity in these circumstances, it must do so plainly and unequivocally. *See Bertrand v. Board of County Commissioners, supra.*

Our conclusion is also consistent with the General Assembly's purpose in not extending immunity to actions for injuries resulting from dangerous conditions of roads, which was to make governments liable for failure to

maintain those facilities in a condition safe for public use. This legislative emphasis on maintenance of roads and highways in a condition that promotes the safe movement of traffic reflects concern that those facilities function in a way consistent with that purpose. *State v. Moldovan, supra.*

Thus, we conclude the trial court did not err in ruling the barricades were not traffic markings under § 24–10–106(1)(d).

## II.

The City next contends that, even if the barricades were not traffic markings under the Act, the failure to dismiss was error because its alleged failure to maintain the barricades properly and the maintenance of the dirt embankment on the roadway did not constitute "dangerous conditions." We disagree.

■ A dangerous condition is not limited to those conditions that have their physical source in the highway surface itself. *See State v. Moldovan, supra; Schlitters v. State, supra.*

■ Here, the trial court found that the 18–inch high dirt embankment extended across the street more·than five feet before the end of the pavement and obstructed traffic at least with respect to a vehicle's ability to stop at the end of the paved roadway. This finding of fact is adequately supported by the record and, therefore, must be upheld on review. *See Trinity Broadcasting of Denver, Inc. v. City of Westminster, supra.*

Although the absence of a barricade may not itself create a dangerous condition, there was evidence to support the trial court's conclusion that both the failure to maintain the barricade properly in front of the dirt embankment and the dirt embankment itself created dangerous conditions. *State v. Moldovan, supra; Schlitters v. State, supra.*

Accordingly, we find no error.

The order is affirmed.

METZGER and PLANK, JJ., concur.