**Bill RITTER, in his official capacity as Colorado Governor, Applicant–Appellee,**

v.

**Brad JONES, Respondent–Appellant,**

and

**Rosemary Marshall, in her official capacity as Colorado State Representative, Intervenor–Appellee.**

No. 08CA0506.

Colorado Court of Appeals, Div. I.

April 2, 2009.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

Hackstaff Gessler LLC, Scott E. Gessler, Mario D. Nicolais, II, Denver, Colorado, for Respondent–Appellant.

Holland & Hart, LLP, Maureen Reidy Witt, Greenwood Village, Colorado; Holland & Hart, LLP, Elizabeth A. Phelan, Boulder, Colorado; Holland & Hart, LLP, Jonathan S. Bender, Denver, Colorado, for Intervenor–Appellee.

Opinion by Judge TAUBMAN.

Respondent, Brad Jones, appeals the order of the district court holding that the Colorado Open Records Act (CORA), §§ 24–72–100.1 to –502, C.R.S.2008, does not require Governor Bill Ritter to allow him to inspect information redacted from a memorandum sent to the Governor's legal counsel. We conclude that the redacted content was confidential "work product" exempted from public disclosure under CORA, and therefore affirm the district court's order.

The memorandum in question concerned draft legislation considered by intervenor, former Colorado State Representative Rosemary Marshall.

The parties stipulated to the following facts.

Representative Marshall requested that the Office of Legislative Legal Services (OLLS) draft legislation to implement a state employee partnership system in Colorado. In response, an OLLS lawyer drafted legislation and—as authorized by Representative Marshall—sent it to Steven Ury, assistant general counsel for the Service Employees International Union (SEIU), for review and comment.

Ury then wrote a memorandum to two union officials regarding establishing a state employee partnership system. The memorandum's appendix contained excerpts of the draft legislation prepared by OLLS. Ury then sent a copy of the memorandum to the Governor's chief legal counsel.

Shortly thereafter, Jones filed a CORA request with the Office of the Governor for all "written and electronic correspondence between any labor organizations (including labor unions) or their representatives, and

the Governor or employees of the offices of the governor."

Representative Marshall learned of Jones's request and advised the Governor's legal counsel that she believed the excerpts of draft legislation in the memorandum were confidential "work product" exempt from public disclosure under CORA. In response to the CORA request, as relevant here, the Governor provided Jones a copy of the memorandum but redacted the appendix containing relevant excerpts of the draft legislation. The Governor then filed an application in the district court for an order determining whether CORA required disclosure of the appendix. Although the Governor did not take a position regarding whether disclosure should be required, Representative Marshall intervened and argued against disclosure.

Based on the parties' stipulation of facts, the district court ruled in a well-reasoned opinion that disclosure of the redacted information was not required by CORA. This appeal ensued.

### I. Standard of Review and Legal Background

■ Because the district court based its order on stipulated facts, we are obligated to make an independent judgment on the merits. *Bolser v. Bd. of Comm'rs,* 100 P.3d 51, 53 (Colo.App.2004).

The primary issue in this case is the extent of the work product exception to disclosure under CORA. We review such issues of statutory interpretation de novo. *Denver Publ'g Co. v. Bd. of County Comm'rs,* 121 P.3d 190, 195 (Colo.2005).

■ Our primary task when interpreting a statute is to give effect to the legislative purpose underlying it. *East Lakewood Sanitation Dist. v. Dist. Court,* 842 P.2d 233, 235 (Colo.1992). To determine legislative intent, we first look to the plain language employed by the General Assembly. *Farmers Group, Inc. v. Williams,* 805 P.2d 419, 422 (Colo. 1991). We must choose a construction that serves the purpose of the legislative scheme, and will not strain to give statutory language other than its plain meaning unless the result is absurd. *City of Westminster v. Dogan*

*Construction Co.,* 930 P.2d 585, 590 (Colo. 1997) (*Dogan Construction* ). If a statute is ambiguous, we may consider the object sought to be attained and the consequences of a particular construction. § 2–4–203, C.R.S.2008; *see Hallam v. City of Colorado Springs,* 914 P.2d 479, 482 (Colo.App.1995).

■ The General Assembly has declared that it is "the public policy of this state that all public records shall be open for inspection by any person at reasonable times, except as ... provided by law." § 24–72–201, C.R.S. 2008. CORA requires that custodians of public records make them available to the public. *See* § 24–72–203, C.R.S.2008. However, not all information held by the state is a public record. *See* § 24–72–202(6)(b), C.R.S. 2008.

When the General Assembly originally enacted CORA, it contained a limited number of exceptions to the general rule that all records were open for inspection. Those exceptions included certain police records, test questions, real estate appraisals, and other forms of information whose disclosure would be contrary to the public interest. Ch. 66, sec. 4, § 113–2–4, 1968 Colo. Sess. Laws 202–03. The General Assembly limited access to additional types of public documents in its 1996 amendments to CORA. *See* Ch. 271, sec. 4, § 24–72–202, 1996 Colo. Sess. Laws 480–82; *City of Colorado Springs v. White,* 967 P.2d 1042, 1056 (Colo.1998) (*White* ). The 1996 amendments added legislative "work product" to the list of statutory exceptions to disclosure.

"Work product" prepared for elected officials is excluded from the definition of "public records" and is therefore not subject to disclosure under CORA. § 24–72–202(6)(b)(II), C.R.S.2008. CORA defines two types of work product. As relevant here, work product "includes all documents relating to the drafting of bills or amendments, pursuant to section 2–3–505(2)(b), C.R.S., but it does not include the final version of documents." § 24–72–202(6.5)(b), C.R.S.2008.

### II. Work Product Classification of the Draft Legislation

■ Jones contends that the memorandum cannot be classified as work product because

it was included in correspondence from a private citizen (Ury) to the Governor. Jones maintains that only a tangible document produced by OLLS is exempt from disclosure under CORA section 24–72–202(6.5)(b). However—contrary to Jones's argument—we focus on whether the content of a communication is exempt, rather than on whether the communication qualifies as a document. *See Dogan Construction*, 930 P.2d at 591. Because we conclude that the redacted content of the memorandum was legislative work product produced by OLLS, we reject Jones's contention.

### A. OLLS Draft Legislation

■ Initially, we must decide whether the OLLS draft legislation excerpted in the memorandum was work product under CORA. We conclude that it was.

As noted, under CORA, work product includes "all documents relating to the drafting of bills or amendments, pursuant to section 2–3–505(2)(b)." § 24–72–202(6.5)(b). The cross-referenced section is one of a series of statutes establishing the OLLS and charging it with providing the General Assembly technical advice and legislation drafting assistance. *See, e.g.*, § 2–3–501, C.R.S.2008. It specifies, "All documents prepared or assembled in response to a request for a bill or amendment, other than the introduced version of a bill or amendment that was in fact introduced, shall be considered work product . . . ." § 2–3–505(2)(b).

Here, the stipulated facts make clear that the draft legislation at issue met this definition of work product. The draft legislation was prepared by OLLS in response to a request from Representative Marshall to draft legislation concerning a state employee partnership system. Because the draft legislation was never introduced in the General Assembly, it falls within the definition of work product in section 2–3–505(2)(b).

The draft legislation is also work product under section 24–72–202(6.5)(b), because it is a document relating to the drafting of a bill pursuant to section 2–3–505(2)(b).

We thus conclude that the draft legislation produced by OLLS was work product under section 24–72–202(6.5)(b). This conclusion renders it unnecessary for us to decide whether the draft legislation would meet any other statutory definition of work product.

### B. Legal Standards

■ Having determined that the draft legislation prepared by OLLS was work product, we must now decide whether it retained its work product status when incorporated into the Ury memorandum. We conclude that it did.

■ Jones urges us to focus on the fact that the memorandum was not a "document" produced by OLLS, and therefore to conclude that it cannot be a "document[ ] relating to the drafting of bills" exempt from disclosure under CORA section 24–72–202(6.5)(b). However, we focus on content rather than form when assessing whether information falls within an exception to disclosure under CORA. *See Dogan Construction*, 930 P.2d at 591. The supreme court held in *Dogan Construction* that focusing on the form in which information appears can misconstrue the General Assembly's intent to limit access to some types of information. *Id.* at 590; *see also Denver Publ'g Co.*, 121 P.3d at 199 (applying content-based inquiry).

Jones argues that we should not rely on *Dogan Construction* because that case's approach is "only triggered when terms are ambiguous and the [G]eneral [A]ssembly has shown a desire to protect confidential, private information." However, the circumstances of that case are similar to those present here.

The *Dogan Construction* court held that a statutory exception to CORA disclosure for "letters of reference concerning employment" under section 24–72–204(3)(a), C.R.S.2008, applied to questionnaires filled out by government employees checking references provided by a contractor. 930 P.2d at 586. The court found ambiguity in the term "letters of reference" due to the absurdity of giving literal meaning to the phase (i.e., exempting from disclosure only letters sent by mail). *Id.* at 590. Employing a content-based analysis, the court determined that although the questionnaires at issue were not "letters,"

they were still exempt from disclosure. *See id.* at 592.

A similar situation exists here. A literal application of the word "document" in section 24–72–202(6.5)(b) would allow work product status for only tangible pieces of paper produced by OLLS. All non-tangible forms of modern written communication such as electronic mail and electronically stored files, would not be considered work product. Such an emphasis on form would not provide accurate guidance as to the legislative intent of a statute restricting access to information. Although CORA does not define the word "document," its definitions of "correspondence" and "writings" include non-tangible formats such as electronic mail. *See* § 24–72–202(1), (7), C.R.S.2008. We thus perceive that the term "document" in CORA section 24–72–202(6.5)(b) is ambiguous in the same way as the term "letters" addressed in *Dogan Construction. See* 930 P.2d at 590. Accordingly, we conclude that the content-based analysis prescribed in *Dogan Construction* applies here as well.

### C. Application to Work Product in the Memorandum

Jones contends that the memorandum is not exempt from disclosure under section 24–72–202(6.5)(b) because it is not a document written by OLLS. We reject this contention.

The stipulated facts indicate that although Ury wrote the memorandum, the redacted portions of the memorandum were written by OLLS. Focusing on who wrote the memorandum—rather than on its content—would misconstrue the work product exemptions. *See White*, 967 P.2d at 1056 (the 1996 CORA amendments intended to limit access to public documents). Because the original draft legislation was work product exempt from disclosure under CORA, the portions of the draft legislation contained in the memorandum remained work product.

Jones argues that section 24–72–202(6.5)(b) exempts from disclosure only tangible documents produced by OLLS. Because the draft legislation in the memorandum was not printed on a piece of paper originating at OLLS, Jones implies, it is not exempt from disclosure. This emphasis on the physical format

in which information is presented, rather than the nature of the information itself, has previously been rejected by Colorado courts. *See Denver Publ'g Co.*, 121 P.3d at 199; *Dogan Construction*, 930 P.2d at 591. Our precedent eschews strict attention to form and mandates a content-based inquiry into CORA disclosure exceptions. *See Denver Publ'g Co.*, 121 P.3d at 199; *Dogan Construction*, 930 P.2d at 591.

Jones attempts to highlight the importance of the term "documents" in CORA section 24–72–202(6.5)(b) by contrasting it to the phrase "contents and nature" in the OLLS enabling legislation, section 2–3–505(2)(a), C.R.S.2008. However, the "contents and nature" phrase is not located within CORA. Thus, the contrasting terms do not assist in construing the word "documents" in CORA.

Additionally, Jones's emphasis on physical "documents" would exclude from protection many common forms of written communication. Under his interpretation of CORA, physical documents would lose their work product designation by being converted to a non-tangible format such as electronic mail and electronically stored files. That interpretation cannot be squared with CORA's clear intent to shield work product from disclosure. It is also inconsistent with a CORA provision expressly declining to focus on the form of written materials. *See* § 24–72–202(7) (" 'Writings' means ... documentary materials, regardless of physical form or characteristics."). Consequently, we decline to adopt Jones's interpretation. *See People v. Hale*, 654 P.2d 849, 850 (Colo.1982) (literal interpretation not applied where it would produce an absurd result not contemplated by the legislature).

■ Jones correctly argues that courts must interpret the work product exception narrowly. *See, e.g., Sargent Sch. Dist. No. RE–33J v. Western Servs., Inc.*, 751 P.2d 56, 60 (Colo.1988). Our interpretation of CORA does just that. The first sentence of section 24–72–202(6.5)(b) exempts from disclosure only information generated by OLLS that relates to the drafting of bills or amendments. Thus, the redacted portion of the memorandum, which contains excerpts of

OLLS draft legislation, is exempt from disclosure. The remainder of the Ury memorandum has already been provided to Jones.

 Jones contends that this interpretation is too broad, because it would allow Representative Marshall to redact specific sentences or paragraphs of the memorandum. We need not address this hypothetical situation. However, we note that where a single document contains both public and confidential information, it is appropriate to redact the confidential information prior to public inspection. *See Denver Publ'g Co.*, 121 P.3d at 205. That is precisely what Governor Ritter did here.

*Losavio v. Mayber*, 178 Colo. 184, 496 P.2d 1032 (1972), does not mandate a contrary result. In that pre–1996 CORA amendment case, the supreme court held that police records that were once exempt from disclosure lost their exemption when provided to a district attorney's office for use in picking juries for criminal trials. *See id.* at 188–89, 496 P.2d at 1034. Unlike the statutory provisions discussed in *Losavio,* our decision here is based on different statutory language defining work product that is exempt from disclosure.

### III. Waiver of Work Product Designation

 Jones contends that even if the memorandum is confidential work product, Representative Marshall cannot shield its redacted contents from disclosure because she authorized OLLS to release its draft legislation to Ury. We disagree.

#### A. Legal Standards

CORA designates several ways that an elected official can waive the disclosure exemption for what would otherwise be work product. Elected officials may release or authorize the release of all or any part of work product prepared for them. § 24–72–202(6)(b)(II). Additionally, if materials are "distributed to the members of a public body for their use or consideration in a public meeting or cited and identified in the text of the final version of a document that expresses a decision by an elected official," they are no longer work product. § 24–72–

202(6.5)(c)(IV), C.R.S. 2008. Finally, all final versions of documents that express a final decision by an elected official are not work product. § 24–72–202(6.5)(c)(I), C.R.S.2008.

 In addition to these waiver provisions, the supreme court has held that although there are no express provisions doing so, CORA incorporates common law concepts of privilege and waiver. *See White,* 967 P.2d at 1056. The 1996 CORA amendments "were intended to extend the traditional notions of the attorney-client and attorney work product privileges to cover certain legislative materials." *Id.* Traditionally, the work product privilege gives qualified immunity from discovery to materials prepared in anticipation of litigation. *Cardenas v. Jerath,* 180 P.3d 415, 421 (Colo.2008). This privilege is waived if work product is voluntarily disclosed to a party having no common interests that establish a basis for an expectation of privacy. *Denver Post Corp. v. Univ. of Colo.,* 739 P.2d 874, 881 (Colo.App.1987).

 The common interest doctrine is an exception to the general rule that one who discloses confidential material to a third party waives the attorney work product privilege. *Black v. Southwestern Water Conservation Dist.,* 74 P.3d 462, 469 (Colo.App.2003) (discussing the common interest doctrine in relation to the attorney-client privilege); *see In re Grand Jury Subpoenas, 89–3 & 89–4, John Doe 89–129,* 902 F.2d 244, 249 (4th Cir.1990) (common interest rule applies to communications subject to both the attorney-client and work product privileges). "Communications shared with third persons who have a common legal interest with respect to the subject matter thereof will be deemed neither a breach nor a waiver of the confidentiality surrounding the attorney-client relationship." *Black,* 74 P.3d at 469. The common interest doctrine applies even when there is no pending litigation and includes information shared during a common enterprise. *See id.*

#### B. Release of Work Product to SEIU

Here, when Representative Marshall authorized release of the OLLS draft legislation to SEIU, she did not waive the work product disclosure exemption because her

conduct did not come within any of the statutory waiver provisions.

Further, waiver of a statutory protection must be voluntary. *See People v. Wiedemer,* 852 P.2d 424, 438 (Colo.1993); *Padilla v. D.E. Frey & Co.,* 939 P.2d 475, 478 (Colo. App.1997). The stipulated facts indicate that Representative Marshall did not voluntarily release OLLS's draft legislation to the general public and expressly objected to Governor Ritter when Jones sought disclosure of the Ury memorandum.

To the extent Jones argues that a voluntary release of work product to anyone will destroy its work product designation as to everyone, we disagree. *See Losavio,* 178 Colo. at 188, 496 P.2d at 1034 ("A record may be a public record for one purpose and not for another."). Additionally, accepting Jones's argument would limit legislators' ability to consult in confidence regarding draft legislation with private parties possessing expertise in a particular area. This result would contravene the purpose of the General Assembly's work product exemption. *See* Ch. 271, sec. 4, § 24–72–202, 1996 Colo. Sess. Laws 480–82.

Consequently, we conclude that Representative Marshall did not waive the work product exemption by disclosing the draft legislation to Ury.

Because of this conclusion, we need not decide whether the attorney work product privilege applies to the redacted information. Even assuming that common law notions of privilege and waiver do apply—as Jones argues that they should—the common interest doctrine would serve as an exception to waiver. The stipulated facts indicate that Ury provided analysis to assist Representative Marshall's legislative effort. The advisory relationship between Representative Marshall and Ury thus established a common legal interest or enterprise. Accordingly, even if the attorney work product privilege applied, Representative Marshall did not waive that privilege by releasing the OLLS draft legislation to Ury.

### C. Release of Work Product to the Governor's Legal Counsel

■ We reject Jones's contention that Ury changed the work product status of the redacted portions of the memorandum by sending it to the Governor's legal counsel.

CORA authorizes individual legislators to waive work product confidentiality. *See* § 24–72–202(6)(b)(II), (6.5)(c)(I), (6.5)(c)(IV). We have concluded Representative Marshall did not waive the work product status.

Just as we determined above, assuming the applicability of the attorney work product privilege, the common interest doctrine would prevent waiver. Thus, Ury's revealing the memorandum to the Governor's legal counsel did not change the work product character of the redacted portions.

In sum, we conclude that the draft legislation produced by OLLS was work product, and that Representative Marshall did not waive its work product status when she authorized its transmittal from OLLS to Ury or when Ury sent it to the Governor's Office. Thus, we reject Jones's contention.

### IV. Public Policy Arguments

Jones asserts that the district court erred because it improperly considered public policy issues. We disagree.

### A. Unsupported Factual Findings

■ Jones contends that the district court erred by relying on policy-related "factual findings" unsupported by the stipulated facts. We disagree.

We review the trial court's decision de novo and reach an independent judgment on the merits. *Bolser,* 100 P.3d at 53. Our statutory analysis above did not rely on the district court's public policy statements. In any event, those statements are not factual findings, but, rather, tools used by courts to interpret statutes. See § 2–4–203. Accordingly, we reject Jones's contention.

### B. Other States' Experience

■ Jones contends that other states' experiences with their versions of open records laws show that disclosure of draft legislation does not injure the legislative process. However, whether work product should be exempt from public disclosure is a matter for

the legislature, not for this court. *See Crawford Rehabilitation Servs., Inc. v. Weissman*, 938 P.2d 540, 553 (Colo.1997) ("The General Assembly is the branch of government charged with creating public policies, and the courts may only recognize and enforce such policies.").

### C. The "Public Interest" Exception to Disclosure

Jones contends that the "public interest" exception to disclosure under CORA illustrates that public policy does not prohibit disclosure in this case. We disagree.

One CORA provision states that inspection of some documents may be denied where disclosure would be contrary to the public interest. § 24–72–204(2)(a), C.R.S.2008. However, that provision is not at issue here. As previously noted, our conclusions are based on the language of section 24–72–202, not on public policy considerations.

Accordingly, we decline to further address this contention.

### D. The General Assembly's Failure to Adopt Proposed Legislation

■ Finally, Jones contends that the General Assembly's failure to adopt legislation based on the district court's opinion in this case indicates that the district court's reasoning does not reflect Colorado's public policy. We disagree.

Here, Representative Marshall drafted a bill to codify the district court's opinion in this case. However, the bill was withdrawn a short time later without coming to a vote.

■ We generally will not infer legislative intent based on the General Assembly's failure to enact proposed legislation. *See Three Bells Ranch Assocs. v. Cache La Poudre Water Users Ass'n*, 758 P.2d 164, 172 (Colo.1988) (failed attempts to amend a statute shed no light on the legislative intent underlying the original statute); *Colorado Common Cause v. Meyer*, 758 P.2d 153, 159 (Colo.1988) (same).

Here, Representative Marshall could have chosen to withdraw her proposed legislation for reasons too varied for us to determine the intent of the General Assembly. We therefore reject Jones's contention that the withdrawal of the bill was in any way indicative of Colorado public policy.

The order is affirmed.

Judge ROMÁN and Judge PLANK * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2008.