The CITY OF FORT MORGAN, Colorado, a municipal corporation; and Andrea Strand, Custodian of Records, Plaintiffs–Appellees and Cross–Appellants,

v.

EASTERN COLORADO PUBLISHING COMPANY, d/b/a The Fort Morgan Times; and William Holland, Defendants–Appellants and Cross–Appellees.

No. 09CA0133.

Colorado Court of Appeals, Div. VII.

March 18, 2010.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2009.

Light, Harrington, & Dawes, P.C., Steven J. Dawes, Denver, Colorado; Jeffrey A. Wells, City Attorney, Jerrae C. Swanson, Assistant City Attorney, Fort Morgan, Colorado, for Plaintiffs–Appellees and Cross–Appellants.

Levine, Sullivan, Koch, & Schulz, L.L.C., Thomas B. Kelley, Christopher P. Beall, Adam M. Platt, Denver, Colorado, for Defendants–Appellants and Cross–Appellees.

Opinion by Judge J. JONES.

Eastern Colorado Publishing Company (now known as Prairie Mountain Publishing Company, L.L.P.), doing business as *The Fort Morgan Times* newspaper, and the newspaper's publisher, William Holland (collectively, *The Times*), appeal the district court's judgment finding that the City Council of the City of Fort Morgan was not required to provide *The Times* with certain documents created in connection with the City Council's performance evaluation of the City Administrator, Michael Nagy, under the Colorado Open Records Act, sections 24–72–201 to –206, C.R.S. 2009 (CORA). Because we conclude that the documents at issue are not subject to CORA's disclosure requirements under the statutory work product exception, section 24–72–202(6)(b)(II), (6.5), C.R.S. 2009, we affirm.

## I. Background

The facts relevant to the legal issues on appeal are essentially undisputed. We take them from the district court's thorough and well-reasoned "Findings of Fact, Conclusions of Law, and Judgment," and, where necessary to provide largely procedural detail, from the record.

On August 21, 2007, the City Council conducted an interim performance evaluation of Mr. Nagy, which was held in open session at his request as permitted by section 24–6–402(4)(f)(I), C.R.S. 2009.[1] During that session, Mr. Nagy requested that all further evaluations of his performance be in open session, but specifically requested that the individual evaluation forms prepared by City Council members before that session be destroyed. The City destroyed those forms. *The Times* did not request copies.

On November 6, 2007, the City Council approved a written policy for handling performance evaluations of appointed city officials. That written policy tracks the informal, unwritten policy the City Council had

employed at the time of Mr. Nagy's interim performance evaluation. As relevant here, the written policy provides:

- At least two weeks before any personnel review, each City Council member completes a review form and gives it to the City Attorney, who then compiles the members' ratings and comments.

- The City Council members' review forms "shall not be disclosed."

- The City Council members discuss the employee's performance in executive session unless the employee requests that the discussion be held in open session.

- At the session, the Mayor reads the composite evaluation prepared by the City Attorney, which contains ratings (termed "appraisals") and comments obtained from the individual members' review forms.

- Before or during the session, City Council members may provide written statements not already included in their individual review forms.

- The comments contained in the composite evaluation and any additional written comments provided before or at the session shall not identify the City Council members who prepared them.

- The City Council members discuss the employee's performance and goals for the next evaluation.

- The City Council determines an employee's goals and corrective measures or expectations by "informal consensus."

- A final written evaluation is prepared, which the City Council members vote on in open session.

In accordance with this written policy, the City Council set December 18, 2007 as the date for Mr. Nagy's performance evaluation.[2] Each City Council member completed a review form containing numerical ratings (on scale of 1 ("[r]arely demonstrates this performance expectation") to 5 ("[d]emonstrates

---

1. Section 24–6–402(4)(f)(I) provides generally that certain "[p]ersonnel matters" of public bodies shall be discussed in an "executive session that is not open to the public" unless "the employee who is the subject of the session has requested an open meeting...."

2. The City Council used this written policy in conducting evaluations of three other employees before it conducted Mr. Nagy's performance evaluation.

excellent performance")) in forty-five "[s]coring [e]lements" divided among nine more general "Targeted Areas of Accountability" and a section covering Mr. Nagy's "Essential Functions."[3] Some City Council members submitted their completed review forms anonymously. Some did not give ratings in all of the scoring elements. When the City Council members completed these forms, they believed, based on Mr. Nagy's request at his interim evaluation session, that the performance evaluation would be conducted in open session.

The City Attorney collected the individual City Council members' review forms and prepared a spreadsheet showing the individual ratings, an average rating for each "scoring element," and an overall average rating (2.8). The compilation also included the written comments of individual members. It did not, however, indicate which City Council member gave any individual numeric rating or written comment.

Immediately before the performance evaluation session on December 18, the City Attorney gave each City Council member a composite document showing the average ratings in each scoring element and the unattributed comments, but not the numeric ratings of individual members in each scoring element. None of the City Council members ever saw those individual numeric ratings, nor apparently did City Council members otherwise disclose to each other their individual numeric ratings in particular scoring elements.

The City Council conducted Mr. Nagy's evaluation in executive session, with Mr. Nagy present. (Mr. Nagy informed the City Council on December 7 that he had changed his mind and no longer wanted the City Council to conduct his evaluation in open session.) The City Council members discussed the overall rating of 2.8 but did not discuss their individual ratings. Though the testimony at trial established that the City Council members were free to change any of their individual ratings or comments based

on the discussion, none of them did so. The City Council members did, however, tentatively agree on a final evaluation which consisted of an overall rating of 3.0 (rounded up from 2.8), deferral of the decision on increasing Mr. Nagy's compensation to the next evaluation, and their comments (including those added during executive session).

After the City Council returned to open session, its members voted unanimously to approve Mr. Nagy's final evaluation.

The next day, the City Attorney prepared a final evaluation form in accordance with the composite documents he had provided to the City Council members before the executive session and the City Council's approved changes thereto. The final evaluation form was provided to Mr. Nagy that day. He signed it in the space provided for indicating that he agreed with it.

Two days after the executive and open sessions pertaining to Mr. Nagy's performance evaluation, the City Attorney, acting in accordance with past practice and Mr. Nagy's expectations, destroyed the City Council members' individual review forms. He retained the spreadsheet. The City Attorney then knew that *The Times* had expressed interest in obtaining documents relating to Mr. Nagy's performance evaluations.

On December 28, 2007, Mr. Holland, acting as publisher of *The Times,* submitted a CORA request to the City Clerk for "[a] copy of each Individual Review Form completed by each of the seven City Council members, and a copy of Michael Nagy's personal Review Form, which were used to arrive at the City Council's recent 2.8 (rounded up to 3) rating of Michael's performance." Before responding to this request, the City filed this action, requesting a declaratory judgment that CORA did not require it to provide the requested documents (which it noted had been destroyed) to *The Times* because (1) the documents were "work product" within the meaning of the statutory exception for such materials from the definition of "public

**3.** Mr. Nagy apparently completed a self-evaluation form and other employees completed peer review forms, and these forms were provided to City Council members before they completed their individual evaluation forms. Mr. Nagy's self-evaluation form and the peer review forms are not in the record.

records" and (2) the documents were covered by the statutorily recognized "deliberative process privilege."[4] The City sent a letter to *The Times* a few days later denying the CORA request based on these same claimed exceptions.

*The Times* filed an answer and counterclaims in the City's declaratory judgment action. Though *The Times'* answer is not in the record, it apparently sought a declaration that the City had improperly denied its CORA request and a mandatory injunction requiring the City to provide a sworn statement of each City Council member's performance ratings of Mr. Nagy. After replying to *The Times'* counterclaims, the City moved to voluntarily dismiss its declaratory judgment complaint. The court granted that motion.

*The Times'* counterclaims were tried to the court. During the trial, *The Times* requested production of the spreadsheet the City Attorney had prepared in advance of the December 18, 2007 performance evaluation. After determining that *The Times'* initial CORA request was broad enough to include the spreadsheet, the court ruled on *The Times'* counterclaims, as relevant here, as follows:

- The court found that although the individual City Council members' review forms and the spreadsheet are "public records" within the meaning of CORA, they are excepted from the disclosure requirement under the statutory work product privilege.

- The court found that the subject documents are not subject to the deliberative process privilege because they are "not so candid or personal that their public disclosure would be likely to stifle honest and frank discussion within the government."

- The court rejected *The Times'* contention that the City had waived its CORA defenses.

The court entered judgment in the City's favor on *The Times'* counterclaims.

## II.  Discussion

On appeal, *The Times* challenges the district court's ruling that the subject documents are work product materials. Should we rule in *The Times'* favor on the work product issue, the City requests that we determine that the district court erred in ruling that the deliberative process privilege is inapplicable.

### A.  Standard of Review

We defer to the district court's findings of historical fact (none of which either *The Times* or the City appears to contest). *See McIntyre v. Jones,* 194 P.3d 519, 528 (Colo. App.2008) (a trial court's findings of fact will be set aside on appeal only if they are clearly erroneous and not supported by the record); *see also Yaekle v. Andrews,* 195 P.3d 1101, 1111 (Colo.2008). The parties' contentions concern primarily the application of CORA to the historical facts. Statutory interpretation is a question of law, and therefore our review of the parties' respective contentions as to the proper application of the CORA provisions at issue is de novo. *Ritter v. Jones,* 207 P.3d 954, 957 (Colo.App.2009); *Gumina v. City of Sterling,* 119 P.3d 527, 530 (Colo.App. 2004).

### B.  CORA Work Product Privilege

CORA creates a presumptive right of public inspection of "public records." *See* §§ 24–72–201, –203(1)(a), –204(1), C.R.S. 2009. Therefore, "public records" are open for inspection by the public except as provided in CORA itself or otherwise specifically by law. § 24–72–203(1)(a); *Denver Publ'g Co. v. Dreyfus,* 184 Colo. 288, 293, 520 P.2d 104, 106

---

4.  CORA provides an exception from disclosure for records protected under the common law deliberative process privilege. § 24–72–204(3)(a)(XIII), C.R.S. 2009. That common law privilege covers materials that are "predecisional" and "deliberative" if " 'disclosure would be harmful to the public interest.' " *City of Colorado Springs v. White,* 967 P.2d 1042, 1049–51 (Colo.

1998) (discussing the parameters of the privilege) (quoting in part *Martinelli v. Dist. Court,* 199 Colo. 163, 169, 612 P.2d 1083, 1088 (1980)); *see also* § 24–72–204(3)(a) (XIII) (materials must be "so candid or personal that public disclosure is likely to stifle honest and frank discussion within the government").

(1974); *Daniels v. City of Commerce City,* 988 P.2d 648, 650 (Colo.App.1999).

CORA defines "public records," as relevant here, as including "all writings made, maintained, or kept by ... [a] political subdivision of the state ... for use in the exercise of functions required or authorized by law ...." § 24–72–202(6)(a)(I), C.R.S. 2009. However, CORA excludes "work product" from the meaning of "public records." *See* § 24–72–202(6)(b)(II), (6.5). Subsection (6)(b)(II) specifically provides that the term "public records" does not include "[w]ork product prepared for elected officials." As relevant here, subsection (6.5)(a) defines "work product" generally as including "all intra- or inter-agency advisory or deliberative materials assembled for the benefit of elected officials, which materials express an opinion or are deliberative in nature and are communicated for the purpose of assisting such elected officials in reaching a decision within the scope of their authority." Such materials include "[p]reliminary drafts and discussion copies that express a decision by an elected official." § 24–72–202(6.5)(a)(II), C.R.S. 2009. But such materials do not include "[a]ny final version of a document that expresses a final decision by an elected official...." § 24–72–202(6.5)(c)(I), C.R.S. 2009.

■ The City bears the burden of showing that the documents at issue—the individual council members' review forms and the spreadsheet—fall within the statutory work product exception. *Zubeck v. El Paso County Retirement Plan,* 961 P.2d 597, 600 (Colo. App.1998). And we must narrowly construe exceptions from CORA's presumption in favor of public access to public records. *City of Westminster v. Dogan Constr. Co., Inc.,* 930 P.2d 585, 589 (Colo.1997); *Zubeck,* 961 P.2d at 600.

*The Times* contends that the City did not meet its burden of showing the documents at issue are work product either because they are not "advisory or deliberative" or because they reflect "final decision[s]" of the individu-

al City Council members. Neither this court not the Colorado Supreme Court has considered the meanings of these terms in the context of CORA.

"Our primary tasks in construing a statute are to determine and give effect to the General Assembly's intent." *Burbach v. Canwest Inv., LLC,* 224 P.3d 437, 440 (Colo.App. 2009); *see Jones,* 207 P.3d at 957. To those ends, we give words and phrases in a statute their plain and ordinary meanings. *Clark v. People,* 221 P.3d 447, 448 (Colo.App.2009); *Premier Farm Credit, PCA v. W–Cattle, LLC,* 155 P.3d 504, 513 (Colo.App.2006). " 'In addition, we must construe the statute as a whole to give consistent, harmonious, and sensible effect to all its parts.' " *Burbach,* 224 P.3d at 440 (quoting *Premier Farm Credit,* 155 P.3d at 513). If the language of the statute is clear, we apply it according to its clear meaning and will not resort to interpretive rules of statutory construction. *Henisse v. First Transit, Inc.,* 220 P.3d 980, 988 (Colo.App.2009) *(cert. granted* Dec. 14, 2009) (citing, among other cases, *Springer v. City & County of Denver,* 13 P.3d 794, 799 (Colo. 2000)).

■ The commonly understood meaning of "advisory," in the grammatical context of section 24–72–202(6.5)(a), is "containing or giving advice." *Webster's Third New International Dictionary* 32 (2002); *see also Thurmond v. Moxley,* 879 S.W.2d 709, 712 (Mo.Ct.App.1994) ("Advisory means '[c]ounseling, suggesting, or advising, but not imperative or conclusive.' ") (quoting *Black's Law Dictionary* 54 (6th ed.1990)).[5] "Advice" is commonly understood to mean "the way in which one regards something," and is synonymous with a person's view or opinion. Webster's Third New International Dictionary 32; *see also Thompson v. Committee on Legislative Research,* 932 S.W.2d 392, 395 & n. 6 (Mo.1996) (applying definitions in *Webster's Third New International Dictionary* to the meaning of "advisory" committee); *Black's Law Dictionary* 59 (8th ed.2004) (de-

---

5. We may consult dictionary definitions in determining the meaning of a statutory term. *See Washington County Bd. of Equalization v. Petron Development Co.,* 109 P.3d 146, 152 (Colo.2005) (looking to dictionary definition to determine meaning of a term in the state constitution); *Jefferson County Health Services Ass'n v. Feeney,* 974 P.2d 1001, 1004 (Colo.1998) (looking to dictionary definition to determine the meaning of a statutory term).

fining advice as "[g]uidance offered by one person ... to another"). We perceive no indication from CORA's text that "advisory" carries a meaning different from its commonly understood, unambiguous meaning.

■ The commonly understood meaning of "deliberative" is "of, relating to, or marked by deliberation: proceeding or acting by discussion and examination: engaged in or devoted to deliberation." *Webster's Third New International Dictionary* 596; *see also City of Colorado Springs v. White,* 967 P.2d 1042, 1051 (Colo.1998) (construing "deliberative" in the context of the deliberative process privilege as "reflective of the give-and-take of the consultative process"). To deliberate means "to ponder or think about with measured careful consideration and often with formal discussion before reaching a decision or conclusion." *Webster's Third New International Dictionary* 596. Again, we perceive nothing in CORA's text indicating that "deliberative" carries a meaning different from its commonly understood, unambiguous meaning.

■ The City Council members' individual review forms and the spreadsheet the City Attorney prepared based on those forms are clearly advisory within the meaning of section 24–72–202(6.5)(a). The information contained therein was intended to provide the City Council members with the individual members' views and opinions concerning Mr. Nagy's performance for the ultimate purpose of providing preliminary guidance toward a final assessment of his performance. These views and opinions are in both numerical and narrative form. And while the numeric ratings for each scoring element provided to the City Council members was an average of the individual members' ratings, the individual members' ratings nonetheless formed a part of the City Council's preliminary assessment, and thereby assisted in creating a point of departure for the City Council members' discussion of Mr. Nagy's performance.

■ The exception for work product materials requires only that the materials be either advisory "or" deliberative. Therefore, having concluded that the documents at issue are advisory, we need not address the more difficult question whether they are deliberative. *See Zab, Inc. v. Berenergy Corp.,* 136 P.3d 252, 255 (Colo.2006) (courts presume the disjunctive use of the word "or" in a statute marks distinctive categories unless the legislative intent is clearly to the contrary).

We also conclude that the individual members' review forms and the spreadsheet do not express a final decision by any City Council member. Contrary to *The Times'* contention, the individual members' review forms are not the functional equivalent of final "votes" on an employee's performance. Rather, the testimony at trial, which the district court credited, established that the forms reflect only tentative appraisals, the members were free to change ratings and make additional comments during the group discussion of Mr. Nagy's performance, and the members did not make final decisions concerning Mr. Nagy's performance until after they had participated in the executive session. The final decision here was the vote on the final performance evaluation in open session.

We are not persuaded by *The Times'* argument that because none of the individual members changed any numeric rating in any of the scoring elements as a result of their collective discussion, their review forms necessarily reflect final decisions. The fact remains the review forms were merely preliminary and tentative. And in fact the City Council did change the overall numeric rating from 2.8 to 3.0 and added comments based on the discussion in executive session. Further, no City Council member voted for his or her initial individual performance evaluation. Each member took a final position only as to the final evaluation prepared based on the discussion in the executive session. In short, the individual members' review forms and the spreadsheet were merely preliminary and tentative steps leading to the final decision reflected in the final evaluation as voted on by the City Council members.

Nor are we persuaded by *The Times'* contention that the result we reach here will lead to a virtual gutting of CORA. The hypotheticals posited by *The Times* in a parade of horribles assume, incorrectly, that elected officials can hide their positions on issues

merely by establishing policies allowing decisions by consensus. Elected officials must, as was done here, vote in public on final decisions of the collective body. And Colorado law provides that meetings at which potential policies and final decisions are discussed generally must be open to the public. *See* §§ 24–6–101 to –402, C.R.S. 2009.

In sum, we conclude that the City met its burden of showing that the documents at issue are work product and therefore need not be disclosed under CORA. As a result, we need not address the City's contention that the documents are also covered by the deliberative process privilege.[6]

The judgment is affirmed.

Judge ROMÁN and Judge MILLER concur.

---

6. We grant the City's motion to strike documents *The Times* attached to its brief on appeal (Appendices A and B) because those documents are not part of the district court record. *BS & C Enterprises, L.L.C. v. Barnett*, 186 P.3d 128, 133 (Colo. App.2008) (a reviewing court may consider only matters contained in the record); *In re Marriage of Marson*, 929 P.2d 51, 52 (Colo.App.1996) (same). We also strike references to and the discussion of those documents in footnote 2 of *The Times'* brief.