The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 4, 2021

## 2021COA26

**No. 20CA0691, *Prairie Mountain Publishing Co. LLP d/b/a Daily Camera v. Regents of the University of Colorado* — Government — Public Records — Colorado Open Records Act — Colorado Sunshine Act — Open Meetings Law**

A division of the court of appeals holds that a "finalist" under the plain language of the Colorado Open Records Act (CORA) is a person who is disclosed by the appointing entity as a finalist. The division therefore reverses the district court's judgment that would have required the Regents of the University of Colorado to disclose the names and interview materials of all the candidates that they interviewed.

The dissent would hold that CORA requires appointing entities to disclose multiple finalists. The dissent would therefore affirm the district court's judgment.

Court of Appeals No. 20CA0691
City and County of Denver District Court No. 19CV33759
Honorable A. Bruce Jones, Judge

Prairie Mountain Publishing Company, LLP, d/b/a Daily Camera,

Plaintiff-Appellee,

v.

Regents of the University of Colorado,

Defendant-Appellant.

JUDGMENT AND ORDER REVERSED

Division V
Opinion by JUDGE BERGER
Vogt*, J., concurs
J. Jones, J., dissents

Announced March 4, 2021

Maxfield Gunning, LLP, Robert R. Gunning, Eric Maxfield, Boulder, Colorado, for Plaintiff-Appellee

Philip J. Weiser, Attorney General, Michael Kotlarczyk, Assistant Attorney General, Skippere Spear, Senior Assistant Attorney General, Denver, Colorado, for Defendant-Appellant

Philip J. Weiser, Attorney General, Julie C. Tolleson, First Assistant Attorney General, Isabel J. Broer, Assistant Attorney General, Denver, Colorado, for Amicus Curiae Colorado Higher Education Institutions

Baker & Hostetler LLP, Marc D. Flink, Denver, Colorado; Killmer, Lane, & Newman, LLP, Thomas B. Kelley, Denver, Colorado, for Amici Curiae Colorado Freedom of Information Coalition, Joseph L. Brechner Center for Freedom of Information, National Freedom of Information Coalition, News Leaders Association, Society of Professional Journalists, Colorado Politics, Colorado SPJ

Pro Chapter, Colorado Press Association, Reporters Committee for Freedom of the Press, Colorado Broadcasters Association, Denver Post, Colorado Springs Gazette, Colorado News Collaborative and Colorado Sun


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2020.

¶ 1    This case arises under the Colorado Open Records Act (CORA) and the Open Meetings Law (OML).  Prairie Mountain Publishing Company, LLP, d/b/a Daily Camera requested documents regarding applicants for the presidency of the University of Colorado (CU).  CU refused the requests, and the Daily Camera sued.  The district court agreed with the Daily Camera and ordered disclosure of the requested documents.  Because we conclude the district court exceeded its authority in rewriting the applicable statutes, we reverse.

## I.    Background

¶ 2    When CU President Bruce Benson announced his retirement, the CU Board of Regents (Regents) adopted procedures to select his successor.  The Regents appointed an internal search committee and hired an outside search firm.  Initially, the search firm received more than one hundred referrals or applications for the position.  These candidates were winnowed down at various stages.  The search firm narrowed this list to twenty-seven candidates, and the search committee decided to interview eleven, eventually interviewing only ten after one withdrew.  After those interviews, the search committee reduced the remaining applicants to six, all of

1

whom were interviewed by the Regents. After those interviews, the Regents publicly announced that there was only one finalist — Mark Kennedy.

¶ 3   Mr. Kennedy then went through an extensive public vetting process, including personal meetings with various constituent groups at all of CU's campuses. During this vetting process, there was considerable criticism heaped on the Regents regarding both the search process itself and the Regents' apparent selection of Mr. Kennedy. Ultimately, the Regents voted 5-4 to appoint Mr. Kennedy.

¶ 4   After Mr. Kennedy's appointment, the Daily Camera requested under CORA and the OML the names and application documents of the candidates selected by the search committee and those interviewed by the Regents.[1] When CU declined to produce the

---

[1] The names of the candidates selected by the search committee were leaked to the press, even though that information was confidential. Ultimately, CU released documents relating to five of the six persons interviewed by the Regents (including Mr. Kennedy). The dissent correctly observes that this case narrowly escapes dismissal on mootness grounds.

records (except those regarding Mr. Kennedy), the Daily Camera sued in Denver District Court.[2]

¶ 5      The court ruled in favor of the Daily Camera, concluding that the six candidates interviewed by the Regents were the finalists.

¶ 6      Proceedings before the Denver District Court confirmed that, at least with respect to appointment of officers of public entities (which all parties concede include CU and its Regents), both CORA and the OML are seriously flawed.  Despite many legislative attempts over the years to reconcile competing public policy interests, the statutes do a very poor job of precisely designating which records regarding which people are subject to mandatory disclosure.

¶ 7      Faced with these confusing statutes, the district court did a yeoman's job attempting to make sense of and bring clarity to them. We conclude, however, that the district court's efforts were, in the end, outside the proper role of our courts.

¶ 8      It is beyond argument that the district court's construction of CORA and the OML better advance the sunshine and open

---

[2] CU's executive offices are in Denver, making the district court for the second judicial district a proper forum for the CORA proceeding.

3

government principles that underlie those statutes. The statutes, as construed by the district court are "better" in that sense, although that value judgment may well depend on one's point of view. But making statutes clearer, easier to administer, or "better" are not proper roles of this state's courts. That is the job of the General Assembly. *Dep't of Transp. v. City of Idaho Springs*, 192 P.3d 490, 494 (Colo. App. 2008) ("If a statute gives rise to undesirable results, the legislature must determine the remedy. Courts may not rewrite statutes to improve them.") (citations omitted).

¶ 9   Unlike a situation in which a court is tasked with interpreting an ambiguous statute to comport with underlying constitutional commands, there is no such baseline here. The rights involved here are entirely statutory, and the power of the General Assembly to establish, limit, and clarify those rights is plenary. It is in that context that we review the district court's judgment.

II.   Analysis

A.   Standard of Review and Preservation

¶ 10    This case presents a question of statutory interpretation, which we review de novo.[3]  *Oakwood Holdings, LLC v. Mortg. Invs. Enters. LLC*, 2018 CO 12, ¶ 12.  Courts "review de novo questions of law concerning the correct construction and application of CORA."  *Harris v. Denver Post Corp.*, 123 P.3d 1166, 1170 (Colo. 2005).  "Likewise, interpreting the OML presents a question of law that we review de novo."  *Colo. Off-Highway Vehicle Coal. v. Colo. Bd. of Parks & Outdoor Rec.*, 2012 COA 146, ¶ 22.

¶ 11    The issue of whether CORA and the OML require the requested disclosure was preserved for appeal.

B.   The Plain Language of the Statutes is Unambiguous

¶ 12    The overriding goal of statutory construction is to effectuate the legislature's intent.  *Dep't of Revenue v. Agilent Techs., Inc.*,

---

[3] To the extent that CU argued in the district court that its interpretation of CORA or the OML deserved deference, it has not made that argument on appeal.  Arguments not advanced on appeal are generally deemed waived.  *Moody v. People*, 159 P.3d 611, 614 (Colo. 2007).  In any event, CU is not an agency or institution charged with enforcing CORA or the OML, and thus we would not, in any event, defer to its interpretation.  *See, e.g., Huddleston v. Grand Cnty. Bd. of Equalization*, 913 P.2d 15, 17 (Colo. 1996).

5

2019 CO 41, ¶ 16. In doing so, courts "look first to the statute's language, giving words and phrases their plain and ordinary meanings." *Bd. of Cnty. Comm'rs v. Dep't of Pub. Health & Env't*, 2020 COA 50, ¶ 14 (*cert. granted* Sept. 28, 2020). This requires "reading applicable statutory provisions as a whole in order to accord consistent, harmonious, and sensible effect to all their parts." *People in Interest of W.P.*, 2013 CO 11, ¶ 11. However, when the plain language is unambiguous, we look no further. *Id.*

¶ 13 The parties agree that disclosure is required only with respect to finalists. Indeed, CORA *prohibits* CU and other state entities from disclosing any "[r]ecords submitted by or on behalf of an applicant or candidate for an executive position . . . who is not a finalist." § 24-72-204(3)(a)(XI)(A), C.R.S. 2020.

¶ 14 This is the question before us: Who is a finalist? CORA defines a "finalist" as

> an applicant or candidate for an executive position as the chief executive officer of a state agency, institution, or political subdivision or agency thereof *who is a member of the final group of applicants or candidates made public* pursuant to section 24-6-402(3.5), and if only three or fewer applicants or candidates for the chief executive officer position possess the minimum qualifications for the position, said

6

> applicants or candidates shall be considered finalists.

*Id.* (emphasis added).

¶ 15     By the statute's plain language, a "finalist" is a person who is disclosed by the appointing entity as a finalist — who is "made public." *Id.*

¶ 16     Unlike earlier versions of CORA, which were abrogated by the General Assembly, this definition of a "finalist" is confusing and perhaps circular.  The district court acknowledged this, saying that it made no sense to allow the appointing entity to structure its appointment process to require disclosure of only the single person the entity intends to appoint.  Such a process, according to the district court and the Daily Camera, violates the open records and open meetings principles underlying the statutes before us.

¶ 17     That may be true, but we hold this to be insufficient for us to step in and write what some may consider to be better statutes more attuned to concepts of open government.  "Courts may not rewrite statutes to improve them." *City of Idaho Springs*, 192 P.3d at 494.

¶ 18    The bottom line is that it is not impossible to enforce the statutes as written.  (If it were, principles regarding construction of statutes by courts might come into play.)  Doing so may or may not provide the level of open records that many think essential to good government.  But that is not the test.  Instead, we hold that the district court overstepped its bounds in rewriting CORA to provide that the Regents had a mandatory legal duty to disclose the records of the six interviewees.

¶ 19    The problems with the district court's construction in this respect are several.  First, how does a court determine who the finalists are?  That is, even if we were to agree with the district court's interpretation that the plain language requires the disclosure of multiple finalists when more than three applicants possess the minimum qualifications, what judicially manageable standards exist to determine who the finalists are?  Are they the large group of persons vetted by the outside search firm, or the smaller group identified by the internal search committee?  Or are the finalists only those persons that were interviewed by the search

committee?[4]  Is a person a finalist because he or she was interviewed by the Regents, even when the Regents, as a result of those interviews, determine that one or more of the interviewees were unsuitable for the job?  Or are finalists limited to those persons that, after the interviews, are actually considered by the appointing entity for appointment, even when there is only one such person?

¶ 20    In answering these questions, the district court concluded that the finalists were those persons interviewed by the Regents, not the larger groups.  While that choice is reasonable — indeed, that is precisely the choice made by the General Assembly in a prior, but now abrogated, version of CORA — statutory language dictating that choice is absent from the current versions of the statutes. *Compare* § 24-72-204(3)(a)(XI)(A), C.R.S. 2020, *with* § 24-72-204(3)(a)(XI)(A), C.R.S. 1994, *and* Ch. 286, sec. 3, § 24-72-204(3)(a)(XI)(A), 2001 Colo. Sess. Laws 1073.  Instead, that choice

---

[4] In fact, the Daily Camera requested the records of "the 28 candidates interviewed by the search committee."  It is immaterial whether this request was in reference to the twenty-seven candidates that were vetted by the search committee, or the ten candidates actually interviewed by the committee.

reflects a policy decision that is for the General Assembly, not the courts.

¶ 21    The district court supported its interpretation with the dictionary definition of a "finalist" as one who competes in the "final round of competition," and construed that to mean the interviews with the Regents. But the General Assembly itself defined "finalist," and its statutory definition is not the same as the dictionary definition. "[W]hen the legislature defines a term in a statute, that definition governs." *Farmers Ins. Exch. v. Bill Boom Inc.*, 961 P.2d 465, 470 (Colo. 1998). The current statute does not define "finalist" in terms of who receives an interview or rounds of competition.

¶ 22    Instead, the current provision defines a "finalist" as a person "made public pursuant to section 24-6-402(3.5)." § 24-72-204(3)(a)(XI)(A). There is no statutory requirement that an institution name a minimum number of finalists, unless three or fewer applicants "possess the minimum qualifications." *Id.* In that situation, all qualified applicants are finalists. Everyone agrees that this case does not fall into this statutory exception. It is undisputed that more than three applicants possessed the minimum qualifications for CU president. Accordingly, by statute,

only a candidate who was a "member of the final group of applicants or candidates made public pursuant to section 24-6-402(3.5)" of the OML is a finalist. *Id.*

¶ 23    Neither does section 24-6-402(3.5), C.R.S. 2020, of the OML specify the number of finalists that must be named. It states:

> The state or local public body shall make public the list of all finalists under consideration for the position of chief executive officer no later than fourteen days prior to appointing or employing one of the finalists to fill the position. No offer of appointment or employment shall be made prior to this public notice. Records submitted by or on behalf of a finalist for such position shall be subject to the provisions of section 24-72-204(3)(a)(XI). As used in this subsection (3.5), "finalist" shall have the same meaning as in section 24-72-204(3)(a)(XI).

*Id.*

¶ 24    Based on these statutory provisions, because Mr. Kennedy was the only individual "made public pursuant to section 24-6-402(3.5)," § 24-72-204(3)(a)(XI)(A), we conclude that CU acted within its rights to treat him as the sole finalist.

¶ 25    The General Assembly could have said, but did not, that there must be multiple finalists. "Where the legislature could have chosen to restrict the application of a statute, but chose not to, we

11

do not read additional restrictions into the statute." *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 804 (Colo. 2000). And we will not second-guess the policy preferences of the legislature. *Farmers Ins. Exch.*, 961 P.2d at 469.

¶ 26    The district court also pointed to the words "member" and "list" and their dictionary definitions as evidence that the General Assembly intended that there be more than one finalist. These words certainly permit a state entity to name multiple finalists. But these words do not *require* multiple finalists. While the words "member" and "list" can refer to multiple components they can also refer to single components, like single-member LLCs, or a list containing a single item. *See Sedgwick Props. Dev. Corp. v. Hinds*, 2019 COA 102, ¶ 17.

¶ 27    Although "group" usually denotes multiple individuals, we do not think that term alone dictates rewriting the statute in the manner done by the district court. We also point out that section 2-4-102, C.R.S. 2020, which governs construction of statutes, provides that "[t]he singular includes the plural, and the plural includes the singular."

¶ 28    As noted, under a prior version of CORA, both the question and answer were simple: disclosure was required for all finalists, and anyone interviewed by the appointing entity was a finalist. § 24-72-204(3)(a)(XI)(A), C.R.S. 1994.  That is what the district court held here, but that provision of CORA no longer exists.  Ch. 286, sec. 3, § 24-72-204(3)(a)(XI)(A), 2001 Colo. Sess. Laws 1073. When the General Assembly amends a statute there is a presumption that it "intended to change the law."  *Union Pac. R.R. Co. v. Martin*, 209 P.3d 185, 188 (Colo. 2009).

¶ 29    We fully acknowledge that, as written and as we apply the statutes, both CORA and the OML are subject to abuse by appointing entities because they can structure their appointment process to limit applicant disclosure to only one finalist.  Many will argue, more than plausibly, that such a structure is inimical to principles of open government.  And they might be right.  But again, absent underlying constitutional constraints, which do not exist here, that is for the General Assembly to address, not the courts. *City of Idaho Springs*, 192 P.3d at 494; *People v. Ramirez*, 2018 COA 129, ¶ 32 ("While the result mandated by the statutory language

13

likely is undesirable to almost everyone, that does not give us a license to improve or rewrite the statute.").

¶ 30    The Daily Camera also points out, as did the district court, that when there are three or fewer qualified applicants, CORA requires disclosure of *all* of those applicants.  If that is the law, they say, how does it make sense that when there are more than three qualified applicants, the appointing entity can designate only *one* finalist?  While this result may make little sense, it does not reach the high bar of absurdity.  "[T]he alleged absurdity must surmount a high bar to be truly absurd."  Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 Harv. L. Rev. 2118, 2156-57 (2016) (reviewing Robert A. Katzmann, *Judging Statutes* (2014)).

¶ 31    Under the plain language of the statute, there is no minimum number of finalists if there are more than three minimally qualified applicants.  This construction incentivizes hiring institutions to conduct broad, thorough searches of qualified candidates, at least preliminarily.  While we have no idea if this is what the legislature intended — and we take no position on whether this is the right policy choice — it is a plausible policy choice such that our construction is not absurd.  Had the General Assembly intended

that a minimum number of finalists be disclosed when more than three applicants possessed the minimum qualifications, it could have, and presumably would have, said so. But it did not.

¶ 32     In conclusion, the plain language of both CORA and the OML permitted the Regents to do exactly what they did. Whether that is good policy or good government is not for us to decide. Accordingly, we reverse the judgment of the district court.

## C.    Attorney Fees and Costs

¶ 33     The Daily Camera requests recovery of its attorney fees and costs on appeal under C.A.R. 39.1 and section 24-72-204(5)(b), C.R.S. 2020.

¶ 34     Section 24-72-204(5)(b) provides, in part, that "[u]nless the court finds that the denial of the right of inspection was proper, it shall . . . award court costs and reasonable attorney fees to the prevailing applicant in an amount to be determined by the court."

¶ 35     Because we hold that CU's refusal to disclose the records sought by the Daily Camera was permissible under the plain language of CORA and the OML, we deny the Daily Camera's request for attorney fees and costs on appeal.

15

¶ 36    We also reverse the district court's order granting attorney fees

and costs to the Daily Camera.  "[W]hen an underlying judgment is

reversed, an award that is dependent on that judgment for its

validity is also necessarily reversed and becomes a nullity."

*Bainbridge, Inc. v. Douglas Cnty. Bd. of Comm'rs*, 55 P.3d 271, 273

(Colo. App. 2002).

### III.    Conclusion

¶ 37    The district court's judgment as well as its order awarding

attorney fees and costs are reversed.

JUDGE VOGT concurs.

JUDGE J. JONES dissents.

JUDGE J. JONES, dissenting

¶ 38 This is a difficult case — made so because the relevant portions of the Colorado Open Records Act (CORA) and the Open Meetings Law (OML) are, in some respects, less than clear. Certainly the relevant provisions — those relating to who is a "finalist" who must be disclosed by an appointing state entity — could stand some clarifying revision, and I join the majority's call for the General Assembly to amend them so that the expenditure of time and resources relating to disputes such as this can become a thing of the past.

¶ 39 The majority holds that under these statutes, a "finalist" for a position is whomever the appointing entity deigns to label a finalist, and if that is a single individual, so be it. Indeed, the majority holds that this is the unambiguous meaning of the relevant statutes. I respectfully don't agree. As I see it, the relevant statutes — section 24-72-204(3)(a)(XI)(A), C.R.S. 2020, of CORA, and section 24-6-402(3.5), C.R.S. 2020, of the OML — unambiguously contemplate that, unless there is only one applicant for a position, there will always be more than one "finalist." Determining how many finalists there are in a given case is where things get murky.

17

The district court ruled that under the facts of this case the six applicants who interviewed with the Board of Regents (Regents) were the finalists for University of Colorado (CU) president. That seems to me a reasonable application of CORA and OML. Therefore, I would affirm the district court's judgment and its order awarding attorney fees and costs to the Daily Camera.

## I.   Facts

¶ 40   A search firm hired by the Regents identified more than one hundred applicants for the job. In its judgment, twenty-seven of those applicants met the qualifications for the position. The Regents' search committee (which didn't comprise the entire board) interviewed ten of those applicants. It then sent the names of six of those applicants to the Regents. The Regents interviewed those six applicants. They then voted unanimously to name Mark Kennedy as the sole "finalist" pursuant to University of Colorado Board of Regents, Regent Policy 3.E (rev. Sept. 2017), https://perma.cc/KQ4T-7TS7,[1] and they passed a resolution stating as follows:

---

[1] That policy says a "finalist" is

18

> Resolved that the Board of Regents announce Mark R. Kennedy as a finalist for the presidency of the University of Colorado. The Board of Regents welcomes comments on Mr. Kennedy's candidacy and shall not take any action to appoint or employ Mr. Kennedy for at least fourteen days from the date of this resolution.

¶ 41 Mr. Kennedy appeared at open fora at all four CU campuses and the system administration offices. Individuals commented on Mr. Kennedy on a CU website created for that purpose. A little more than three weeks after the Regents named Mr. Kennedy a finalist, they voted 5-4 to appoint him to the CU presidency.

¶ 42 The Daily Camera submitted a CORA request to CU for the names and application documents of the twenty-seven applicants whom the search committee had determined met the qualifications

---

> [a] candidate who has agreed to be advanced for final consideration and potential appointment for the position of president or chancellor. A person who is named as a finalist shall be named in accordance with the requirements of [the OML] C.R.S. 24-6-402(3.5) and records pertaining to that person shall be available for public inspection as allowed by [CORA] C.R.S. 24-72-204[(3)(a)](XI)(A-B).

Univ. of Colo. Bd. of Regents, Regent Policy 3.C.2 (rev. Nov. 2020), https://perma.cc/KQ4T-7TS7.

for the job and the six applicants the Regents had interviewed. The Regents declined to provide the requested information for any applicant other than Mr. Kennedy.

¶ 43   The Daily Camera sued under CORA and the OML. The district court ultimately ruled that the six applicants the Regents had interviewed were finalists, and it ordered CU to produce the requested information for those individuals. After someone publicly disclosed the identities of four of the other five persons interviewed, CU produced the materials relating to those four and Mr. Kennedy.[2]

## II.   The Relevant Statutes

¶ 44   Section 24-72-203(1)(a), C.R.S. 2020, of CORA creates a general rule that "[a]ll public records shall be open for inspection by any person at reasonable times, except as provided in this part 2 or as otherwise provided by law . . . ."[3] One exception is at issue in this case — that for "[r]ecords submitted by or on behalf of an applicant or candidate for an executive position as defined in

---

[2] Because one interviewed person hasn't been publicly identified, this case narrowly escapes dismissal for mootness.
[3] "Public records" is defined in section 24-27-202(6), C.R.S. 2020. There is no dispute that all the documents the Daily Camera seeks are public records.

section 24-72-202(1.3)[, C.R.S. 2020,] who is not a finalist." § 24-72-204(3)(a)(XI)(A). The position of president of CU is an executive position as defined in section 24-72-202(1.3).

¶ 45     For purposes of this exception,

> "finalist" means an applicant or candidate for an executive position as the chief executive officer of a state agency, institution, or political subdivision or agency thereof who is *a member of the final group of applicants or candidates made public pursuant to section 24-6-402(3.5), and if only three or fewer applicants or candidates for the chief executive officer position possess the minimum qualifications for the position, said applicants or candidates shall be considered finalists.*

§ 24-72-204(3)(a)(XI)(A) (emphasis added).

¶ 46     Section 24-6-402(3.5) is part of the OML. It directs the state body to make public "the list of all *finalists* under consideration for the position of chief executive officer no later than fourteen days prior to appointing or employing *one of the finalists* to fill the position." *Id.* (emphasis added). It doesn't separately define "finalist"; instead, it says that for its purposes "'finalist' shall have the same meaning as in section 24-72-204(3)(a)(XI)," the definition for the relevant exception in CORA. *Id.*

21

¶ 47 Ultimately, then, the meaning of "finalist" for purposes of both CORA and the OML turns on the meaning of the above-highlighted portions of section 24-72-204(3)(a)(XI)(A), though, as discussed below, sections 24-6-402(3.5) and 24-72-203(1)(a) have something to say about the matter.

## III.  Standard of Review

¶ 48 Because this case turns on the interpretation of CORA and the OML, we review de novo.  *Denver Publ'g Co. v. Bd. of Cnty. Comm'rs*, 121 P.3d 190, 195 (Colo. 2005) (CORA); *Bd. of Cnty. Comm'rs v. Costilla Cnty. Conservancy Dist.*, 88 P.3d 1188, 1192 (Colo. 2004) (the OML).[4]

## IV.  Principles of Statutory Interpretation

¶ 49 To achieve our ultimate goal of determining and giving effect to the General Assembly's intent, we begin by attributing to the words and phrases used in the statute their plain and ordinary meanings. *Hassler v. Account Brokers of Larimer Cnty., Inc.*, 2012 CO 24, ¶ 15; *Battle N., LLC v. Sensible Hous. Co.*, 2015 COA 83, ¶ 30.  But we

---

[4] I agree with the majority that since CU isn't an agency tasked with implementing CORA or the OML — but is only an institution subject to those laws — we don't owe any deference to its interpretation of the relevant statutes.

don't consider words and phrases in isolation; rather, we consider them "in context — both in the context of the statute of which the words or phrases are a part and in the context of any comprehensive statutory scheme of which the statute is a part." *People v. Berry*, 2017 COA 65, ¶ 13, *aff'd*, 2020 CO 14; *see Jefferson Cnty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010). At the same time, we strive to give consistent, harmonious, and sensible meaning to all of a statute's language. And we must avoid any interpretation that would lead to an illogical or absurd result. *Schaden v. DIA Brewing Co., LLC*, 2021 CO 4M, ¶ 32; *Ferguson v. Spalding Rehab., LLC*, 2019 COA 93, ¶ 10. Indeed, the General Assembly's manifest intent must prevail over a literal meaning of the statute if that literal meaning would lead to an absurd result. *Henisse v. First Transit, Inc.*, 247 P.3d 577, 579 (Colo. 2011); *Battle N.*, ¶ 30.

¶ 50 If, after applying these principles, we determine that the statutory words and phrases are unambiguous, we enforce them as written. *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011). But it isn't always so easy. Sometimes application of these principles doesn't yield a clear meaning; sometimes the statutory

language is ambiguous — that is, susceptible of more than one reasonable interpretation. When that is the case — and only when that is the case — we may look to other rules of statutory interpretation to resolve the ambiguity. *Berry*, ¶¶ 13-14; *see* § 2-4-203, C.R.S. 2020. There are many such rules, and which ones apply in a given case will vary. *Id.* at ¶ 14.

¶ 51    But given CORA's broad, general policy favoring public disclosure of public records, we are also guided by two other, related principles. First, we must narrowly construe CORA's exceptions. *City of Westminster v. Dogan Constr. Co., Inc.*, 930 P.2d 585, 589 (Colo. 1997); *City of Fort Morgan v. E. Colo. Publ'g Co.*, 240 P.3d 481, 486 (Colo. App. 2010).[5] And second, the party claiming that an exception applies has the burden of showing that the documents in question fall within the claimed exception. *Shook v. Pitkin Cnty. Bd. of Cnty. Comm'rs*, 2015 COA 84, ¶ 6; *City of Fort*

---

[5] In challenging this principle, the Regents cite to *Benefield v. Colorado Republican Party*, 2014 CO 57, ¶ 25. But that citation is to a *dissent.* The Regents didn't acknowledge that in their opening brief or even in their reply brief after the Daily Camera's answer brief noted it.

*Morgan*, 240 P.3d at 486; *Zubeck v. El Paso Cnty. Ret. Plan*, 961 P.2d 597, 600 (Colo. App. 1998).[6]

## V.    Analysis

¶ 52    The majority quotes section 24-77-204(3)(a)(XI)(A) and immediately concludes, without intervening analysis, that "[b]y the statute's plain language, a 'finalist' is a person who is disclosed by the appointing entity as a finalist — who is 'made public.'" *Supra* at ¶ 15.  It then notes that "this definition of 'finalist' is confusing and perhaps circular." *Supra* at ¶ 16.  And later in the opinion, the majority observes that the statute requires the naming of all applicants when there are three or fewer applicants, and that it therefore makes "little sense" that an appointing entity can designate one finalist when there are more than three applicants. *Supra* at ¶ 30.  Nonetheless, the majority holds that the "confusing

---

[6] We must also interpret the OML broadly to further its intent to give citizens a greater opportunity to become fully informed on issues of public importance.  *Bd. of Cnty. Comm'rs v. Costilla Cnty. Conservancy Dist.*, 88 P.3d 1188, 1193 (Colo. 2004); *Cole v. State*, 673 P.2d 345, 347, 349 (Colo. 1983).  And, as with CORA, we must strictly construe exceptions to the OML's requirement of public access to meetings at which the public's business is discussed. *Gumina v. City of Sterling*, 119 P.3d 527, 532 (Colo. App. 2004).

and perhaps circular" definition of "finalist" that it adopts — that is, a finalist is whomever the appointing entity says is a finalist — is the definition that it must enforce even though it doesn't make sense. *Supra* at ¶¶ 16, 18, 30. I can't agree.[7]

¶ 53     This interpretation runs afoul of several basic principles of statutory construction. First, it contravenes the principle that we must interpret a statute as a whole to give it "sensible" effect. *Schaden*, ¶ 32; *Ferguson*, ¶ 10. Adopting a construction that the majority concedes doesn't make sense can't be squared with that principle.

¶ 54     Second, even if the majority were correct that a literal construction of the statute leads to its interpretation of the meaning of "finalist" (a conclusion with which I don't agree, as explained

---

[7] The district court relied heavily on the commonly understood meaning of "finalist." Like the majority, I don't go there because the term is defined in the statute. But I do observe that the commonly understood meaning of that term undercuts the majority's interpretation. *See* Webster's Third New International Dictionary 851 (2002) (a "finalist" is "any of the contestants who meet in the final round of a competition"); *see also Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-24 (1992) (when faced with a statutory definition of a term that is essentially circular and unhelpful, a court should assume the legislature intended the accumulated settled meaning under the common law).

below), that interpretation shouldn't be adopted because it leads to an absurd result. *See Henisse*, 247 P.3d at 579 (the General Assembly's intent must prevail over a literal meaning that would lead to an absurd result). It is absurd because, as the majority recognizes, it allows for less disclosure when there are more than three applicants than when there are three or fewer applicants (a result which, as noted, the majority says doesn't make sense). And it leads to an absurd result because it allows each appointing entity unfettered power to determine who is a finalist. Different appointing entities can take different approaches and can manipulate their procedures to shield information from disclosure in spite of the policies served by CORA and the OML. In other words, under the majority's interpretation, "finalist" really has no meaning at all — it's just whatever an appointing entity says it is.

¶ 55    Third, the majority fails to read the statutory provisions as a whole and in context. The majority simply skips over the phrase "who is a member of the final group of applicants or candidates." To me, this phrase unambiguously contemplates multiple finalists. The majority, however, says all the plural words in that phrase can be read as singular. I disagree. Reading them as singular certainly

27

isn't the most natural way to read them, and Colorado courts have long favored the most natural reading of statutory language. *See, e.g., Qwest Corp. v. Colo. Div. of Prop. Tax'n*, 2013 CO 39, ¶ 35M, *abrogated on other grounds by Warne v. Hall*, 2016 CO 50; *In re Petition of S.O.*, 795 P.2d 254, 259 (Colo. 1990); *U.S. Fid. & Guar. Co. v. People*, 44 Colo. 557, 567, 98 P. 828, 832 (1908); *Markus v. Brohl*, 2014 COA 146, ¶ 37. Nor, in a similar vein, is such a reading consistent with the commonly understood meanings of these terms. *See Ybarra v. Greenberg & Sada, P.C.*, 2018 CO 81, ¶ 10 (term that isn't defined "must be understood according to its ordinary meaning"); *OXY USA, Inc. v. Mesa Cnty. Bd. of Comm'rs*, 2017 CO 104, ¶ 16 (we must give words and phrases in a statute "their commonly accepted and understood meanings"). That the plural meaning is intended by the General Assembly is further borne out by its stringing together of multiple plural terms, as well as the clause addressing the situation when there are three or fewer applicants.

¶ 56     The majority justifies its treatment of multiple plural terms as including the singular in two ways. It says first that while "'group' usually denotes multiple individuals," the use of that "term alone"

28

does not "dictate[] rewriting the statute in the manner done by the district court." *See supra* at ¶ 27. But the word "group" is *always* — not usually — plural.[8] A group is "two or more figures . . . forming a distinctive unit complete in itself or forming part of a larger composition"; "a relatively small number of individuals assemble or standing together"; "a number of individuals bound together by a community of interest, purpose, or function"; or some other collection made up of at least two elements. Webster's Third New International Dictionary 1004 (2002). And so to construe "group" as plural is not to rewrite the statute, but to enforce it as written.[9]

---

[8] In this way, "group" is like "a few," "several," or "many." It isn't a singular noun transformed into a plural form of the noun merely by adding an "s."

[9] The case cited by the Regents in their opening brief, *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191 (10th Cir. 2019), for the proposition that "group" can be singular actually supports the notion that a group is more than one person. It says, "[a]n equal protection claim may be asserted with respect to a group *or* a 'class of one.'" *Id.* at 1196 (emphasis added) (citation omitted). (The Regents omit the internal quotation marks in this quote when quoting this statement in their opening brief.) The case *A.N.* cites for this proposition, *A.M. v. Holmes*, 830 F.3d 1123 (10th Cir. 2016), expressly distinguishes between groups, which comprise more than one person, and classes of one, which do not. *Id.* at 1166.

¶ 57 The majority also relies on section 2-4-102, C.R.S. 2020, which says that "[t]he singular includes the plural, and the plural includes the singular." But statutes such as this should be applied to further legislative intent, not to undermine it. Put another way, they should be applied when necessary to carry out the evident intent of a statute. *See, e.g.*, *First Nat'l Bank in St. Louis v. Missouri*, 263 U.S. 640, 657 (1924); *Dakota, Minn. & E. R.R. Corp. v. Schieffer*, 648 F.3d 935, 938 (8th Cir. 2011); *Toy Mfrs. of Am., Inc. v. Consumer Prods. Safety Comm'n*, 630 F.2d 70, 74 (2d Cir. 1980), *abrogation on other grounds recognized by Prestop Holdings, LLC v. United States*, 96 Fed. Cl. 244 (2010); *see also* 2A Norman J. Singer & J. D. Shambie Singer, *Sutherland Statutes and Statutory Construction* § 47:34, at 506-07 (7th ed. 2014). In my view, the evident intent of the statute — as expressed by the General Assembly's repeated and connected uses of plural terms in section 24-72-204(3)(a)(XI)(A) and (as discussed below) other statutory provisions — is that "group" means (as it always does) more than one person. Therefore, section 2-4-102 doesn't apply.

¶ 58 The majority also fails to recognize the full import of the clause of section 24-72-204(3)(a)(XI)(A) addressing the situation where

there are three or fewer applicants. That clause follows immediately after the "group" clause and provides that all applicants are considered "finalists" if there are three or fewer applicants. *Id.* As the majority concedes, it makes no sense to require disclosure of all applicants in that circumstance but allow an appointing entity to designate only one "finalist" where there are more than three applicants. But rather than accepting the most logical implication of that incongruity, the majority creates a possible rationale for it that not even the Regents put forward. In my view, the General Assembly's inclusion of that clause is most naturally regarded as a further indication that it intended the plural terms in the preceding "group" clause to be applied as commonly understood.

¶ 59 Apart from the text of section 24-72-204(3)(a)(XI)(A) itself, section 24-6-402(3.5) of the OML also indicates that the General Assembly intended that, except in the case of a single applicant, there would always be more than one finalist. It speaks in terms of "the *list* of all *finalists* under consideration" and "*one of the finalists*" for the position. § 24-6-402(3.5) (emphasis added). The natural meaning, or common understanding, of this phrasing is obviously that there will be more than one finalist. *See Kuhn v. Williams,*

31

2018 CO 30M, ¶ 49 (statutes relating to the same subject should be read together).[10]

¶ 60    In the end, the majority's interpretation contravenes the supreme court's admonition that exceptions to CORA's general rule of disclosure must be narrowly construed.  By holding, in essence, that section 24-72-204(3)(a)(XI)(A) leaves it up to each appointing entity to determine for itself what "finalist" means, the majority allows appointing entities to shield persons and documents from disclosure almost without limitation, contrary to the policy of transparency underlying both CORA and the OML.[11]

¶ 61    Considering the language of section 24-72-204(3)(a)(XI)(A) in accordance with the common understanding of that language, the context, other related statutes, and our obligation to narrowly construe exceptions to CORA's disclosure requirement, I conclude

---

[10] All this isn't to say that the phrase "made public pursuant to section 24-6-402(3.5)" does no work in section 24-72-204(3)(a)(XI)(A), C.R.S. 2020.  That phrase, considered in conjunction with section 24-6-402(3.5), C.R.S. 2020, dictates that all finalists be made public within the time specified by section 24-6-402(3.5) ("no later than fourteen days prior to appointing or employing one of the finalists to fill the position").

[11] The only limitation is that one person must be disclosed.

32

that it unambiguously requires an appointing entity to identify more than one "finalist" in all cases, save where there is only one applicant.[12]

¶ 62 But how many finalists must an appointing entity identify if there are more than three applicants? The statute doesn't say. Nor, as currently written, does it give many clues, giving rise to a host of questions (as the majority points out). Try as I might, I can't resolve this ambiguity. But I think the answer will vary from case to case, depending on the number of applicants, the nature of the process involved, and the appointing entity's substantive bases for winnowing the field of candidates.

¶ 63 In this case, I believe the district court reasonably concluded that the six persons the Regents interviewed were finalists. I would therefore affirm the district court's judgment and its award of attorney fees to the Daily Camera. And I would grant the Daily

---

[12] Because I believe the statute is unambiguous on this score, I don't look to other sources of legislative intent, such as legislative history. In any event, I didn't find any of the legislative history recounted by the parties to be particularly enlightening. Nor do I consider the Regents' policy arguments apart from CORA and the OML. Such arguments are best directed to the General Assembly. *Sharon v. SCC Pueblo Belmont Operating Co., LLC*, 2019 COA 178, ¶ 21.

Camera its reasonable attorney fees incurred on appeal. *See* § 24-72-204(5)(b).