24CA0046 Majersky v LCM Prop Mgmt 10-10-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0046
Arapahoe County District Court No. 23CV109
Honorable Elizabeth Beebe Volz, Judge

Gregory Majersky,

Plaintiff-Appellant,

v.

LCM Property Management, Inc.,

Defendant-Appellee.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE FOX
Johnson and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 10, 2024

Gregory Majersky, Pro Se

Jachimiak Peterson Kummer, LLC, Joseph R. Kummer, Taylor A. Clapp,
Lakewood, Colorado, for Defendant-Appellee

¶ 1     Plaintiff, Gregory Majersky, appeals the district court's order granting summary judgment in favor of defendant, LCM Property Management, Inc. (LCM).  We affirm and remand the case to the district court for a determination of LCM's reasonable attorney fees.

## I.     Background

¶ 2     Majersky is a resident and homeowner in Aurora's Summerfield Villas community, which is governed by a homeowners association (HOA), the Summerfield Villas Homeowners Association (Summerfield).  Summerfield hired LCM as its property management company.  This appeal arises out of a dispute between Majersky and LCM's employee, Suzanne Lopez, the Summerfield Community Manager.  In March 2023, Majersky expressed an interest in running for a seat on Summerfield's Board of Directors (Board).  However, Lopez informed Majersky that he could not vote or run in the election because he was delinquent in paying his HOA assessment fees.

¶ 3     On April 25, 2023, proceeding pro se, Majersky sued LCM, alleging that, as Lopez's employer, LCM violated Majersky's First Amendment rights by restricting his participation in the Summerfield election.  Majersky later amended his complaint to

1

allege that the same conduct violated his Fourteenth Amendment due process rights. LCM then moved to dismiss Majersky's First Amendment claims. The district court granted the motion, finding that Majersky failed to state a claim under C.R.C.P. 12(b)(5) because LCM and Summerfield are private entities, not "state actors" subject to the First Amendment. Before discovery, LCM moved for summary judgment on Majersky's remaining due process claims, which the court also granted.

¶ 4    In granting summary judgment, the district court focused primarily on the proper interpretation of Summerfield's "Bylaws," "Declarations," "Rules and Regulations," and "Articles of Incorporation" (collectively, the Governing Documents). It found no genuine dispute as to any material facts, based on the following:

- The Bylaws authorize the Board and its agents to preclude a homeowner from voting on Summerfield matters when the homeowner has delinquent assessment fees.

- Although the Governing Documents do not explicitly address whether a delinquent homeowner may run for a Board position, the Bylaws provision that restricts voting

rights can reasonably be applied to so preclude delinquent homeowners.

- The Governing Documents authorize the Board to employ agents to enforce the Governing Documents.

- The Board hired LCM consistently with these provisions.

- Majersky was delinquent and thus properly precluded from voting and running in the Summerfield election.

¶ 5     LCM subsequently moved to recover attorney fees and costs as the prevailing party under section 38-33.3-123(1)(c), C.R.S. 2024. Shortly thereafter, Majersky filed his notice of appeal. On February 16, 2024, after the notice of appeal was filed, the district court found that LCM was entitled to attorney fees but stayed its ruling on the amount of the award pending this appeal.

## II.     Issues Raised on Appeal

¶ 6     On appeal, Majersky raises two main arguments. First, he argues that the district court erroneously interpreted the Bylaws as allowing the Board and LCM to suspend a delinquent homeowner's eligibility to run for a Board seat. Second, he argues that the district court erred by finding that the Board and/or the Governing Documents gave LCM and Lopez authority to suspend his voting

3

rights. Thus, Majersky asserts that LCM violated his Fourteenth Amendment due process rights by suspending his rights to vote in and run for the Summerfield election.[1] Majersky also raises several arguments that were not preserved for appeal because they were not raised in the district court or were raised for the first time in his reply brief. Finally, LCM asks us to award its attorney fees under section 38-33.3-123(1)(c) for defending this appeal.

## III. Standard of Review

¶ 7 We review de novo orders granting summary judgment. *Vista Ridge Master Homeowners Ass'n v. Arcadia Holdings at Vista Ridge, LLC*, 2013 COA 26, ¶ 8. Under C.R.C.P. 56(c), summary judgment is warranted when "there is no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." We also review de novo a district court's interpretation of

---

[1] In his notice of appeal, Majersky indicated that he appealed only the district court's order from December 7, 2023, not the court's June 27, 2023, order dismissing his First Amendment claims. *See Prairie Mountain Publ'g Co. v. Regents of Univ. of Colo.*, 2021 COA 26, ¶ 10 n.3 ("Arguments not advanced on appeal are generally deemed waived."). However, we liberally construe pro se parties' filings. *See Minshall v. Johnston*, 2018 COA 44, ¶ 21. Regardless of whether Majersky waived his First Amendment arguments, our conclusion that LCM and Summerfield are not state actors is dispositive of both constitutional claims.

declarations of covenants, bylaws, and other governing documents. *See Vista Ridge*, ¶ 8.

## IV. Analysis

### A. The Bylaws Implicitly Authorize Summerfield and LCM to Suspend Majersky's Eligibility to Run in Summerfield Elections

¶ 8    Majersky first argues that the district court erred by finding that the Governing Documents allow the Board or its agent(s) to suspend a delinquent homeowner's eligibility to run in Board elections. Essential to the district court's ruling was Article VII, section (1)(b) of the Bylaws, which grants the Board authority to, "suspend the voting rights . . . of a member during any period in which such member shall be in default in the payment of any assessment levied by [Summerfield]."

¶ 9    Although nothing in the Governing Documents discusses eligibility to run in Summerfield elections, the court reasoned that the Bylaws provision restricting voting rights could reasonably apply to restricting a delinquent homeowner's eligibility to run for a Board seat. Specifically, because the homeowner would be unable to vote on matters before the Board or meaningfully participate as a

Board member, the court found that a contrary interpretation would lead to absurd results. We agree.

¶ 10    When interpreting HOA covenants and other governing documents, we first look to the plain language, "giving words and phrases their common meanings." *McShane v. Stirling Ranch Prop. Owners Ass'n*, 2017 CO 38, ¶ 16. When a document's meaning is clear, we will enforce it as written. *Id.* At the same time, we "construe covenants as a whole, keeping in mind their underlying purpose." *Buick v. Highland Meadow Ests. at Castle Peak Ranch, Inc.*, 21 P.3d 860, 862 (Colo. 2001). Thus, we seek to give effect to the intention of those who created the instrument and avoid hyper-technical interpretations that will defeat that intention or yield absurd results. *Quarky, LLC v. Gabrick*, 2024 COA 76, ¶ 11. On this point, *Evergreen Highlands Ass'n v. West*, 73 P.3d 1 (Colo. 2003), is instructive.

¶ 11    In *West*, our supreme court considered whether, absent an explicit written provision imposing mandatory dues, an HOA had implicit power to collect assessments from members. *Id.* at 2, 4. Relying in part on the Colorado Common Interest Ownership Act

6

(CCIOA)[2] and the Restatement (Third) of Property: Servitudes (Am. L. Inst. 2000) (hereinafter, Restatement),[3] the court found such an implied power. *West*, 73 P.3d at 7-9. Specifically, because collecting assessment fees is so integral to an HOA's function, this power can be implied. *See id.* at 8 (Colorado's continued economic prosperity depends on "the strengthening of homeowner associations . . . through enhancing the financial stability of associations by . . . "collect[ing] delinquent assessments" (quoting § 38-33.3-102(1)(b), C.R.S. 2024)). For two reasons, we apply similar reasoning here.

¶ 12    First, allowing a delinquent homeowner to serve on the Board undermines an HOA's essential ability to collect delinquent fees. This situation could create an inherent conflict of interest between the HOA, the member seeking to evade payment, and other Board

---

[2] §§ 38-33.1-101 to -402, C.R.S. 2024.

[3] While Colorado has not explicitly adopted the Restatement in full, our courts consistently rely on its principles for guidance. *See, e.g., Evergreen Highlands Ass'n v. West*, 73 P.3d 1, 4 (Colo. 2003) (adopting the Restatement's approach regarding homeowners associations' implicit power to collect fees); *Roaring Fork Club, L.P. v. St. Jude's Co.*, 36 P.3d 1229, 1235 (Colo. 2001) (adopting part of the Restatement concerning easements); *Lobato v. Taylor*, 71 P.3d 938, 950-56 (Colo. 2002) (relying heavily on the Restatement to reach a conclusion).

members. Indeed, CCIOA requires specific policies concerning Board members' conflicts of interest.[4] § 38-33.3-209.5(1)(b)(II), (4), C.R.S. 2024; *see also* § 38-33.3-310.5, C.R.S. 2024 (applying section 7-128-501, C.R.S. 2024, the Colorado Revised Nonprofit Corporation Act's conflicts of interest provision, to HOAs). Additionally, HOAs may "without specific authorization in the declaration . . . [e]xercise any other powers necessary and proper for the governance and operation of the association." § 38-33.3-302(1)(q), C.R.S. 2024. Preventing conflicts of interest on the Board is one such power that we may reasonably infer.

¶ 13    Second, allowing a delinquent homeowner to serve on the Board leads to absurd results and contradicts the homeowner's duties as a Board member. As a nonprofit, Summerfield is subject to additional statutory requirements. Thus, Summerfield Board members have a duty to act "in the best interests of the nonprofit." § 7-128-401(1)(c), C.R.S. 2024; *see also* Restatement § 6.14 cmt. a (imposing on HOA directors and officers a duty to comply with the

---

[4] While Summerfield does not appear to have such a provision in its Governing Documents, it would be a best practice to adopt one, as it is as a statutory requirement. *See* § 38-33.3-117(1.5)(c), C.R.S. 2024 (applying section 38-33.3-209.5 to HOAs created before 1992).

governing documents).  Failing to pay required assessment fees both violates Summerfield's Governing Documents and conflicts with its interest in collecting fees to care for common areas. Moreover, a delinquent homeowner who cannot vote but can sit on the Board would be a non-voting member, unable to perform essential Board functions.

¶ 14    Such conflicted or "lame duck" membership contradicts CCIOA and Summerfield's Governing Documents.  Therefore, while Majersky is correct that the Governing Documents do not expressly require homeowners to be in "good standing" or current on their dues to run in Summerfield elections, we find that a hyper-technical interpretation is not appropriate in this instance.  *See Quarky*, ¶ 11.  Instead, we hold that CCIOA and the Bylaws give the Board an implied power to suspend a delinquent homeowner's eligibility to run for a Board seat.[5]  Under the Bylaws and Declarations, Majersky was required to pay his assessments.  It is

---

[5] While Summerfield is technically exempt from section 38-33.3-306(1)(c), C.R.S. 2024, as an HOA created before 1992, defining Board member qualifications could help avoid disputes like the one before us.  *See* § 38-33.3-117(3) (exempting HOAs created before 1992 from CCIOA except as expressly provided); § 38-33.3-306(1)(c) (requiring Board member qualifications in HOA bylaws).

also undisputed that Majersky was in default when he asked to run in the Summerfield election. Therefore, we affirm the district court's conclusion that LCM had authority to prevent Majersky from running in the election.

### B. The Bylaws and the Board gave LCM Authority to Suspend Majersky's Eligibility to Vote in Summerfield Elections

¶ 15 Next, Majersky contends that the district court erred by finding that LCM and Lopez had authority to suspend his voting rights. Specifically, he argues that only the Board has such power and, even if it could delegate its authority to LCM, it failed to do so. LCM responds by citing Summerfield's Rules and Regulations, which give the Board authority to appoint a "community manager" responsible for the day-to-day enforcement of the Governing Documents. Thus, because Summerfield hired LCM and Lopez (LCM's employee), LCM argues that it had authority to suspend Majersky's voting. We agree for two reasons.

¶ 16 First, both the Bylaws and the Declarations allow the Board to suspend a delinquent homeowner's voting rights.[6] This is

---

[6] The Bylaws plainly state that "[t]he Board of Directors shall have power to . . . suspend the voting rights" of delinquent homeowners.

consistent with the responsibility that an HOA can require property owners to pay their dues and penalize a delinquency. *See West,* 73 P.3d at 7; § 38-33.3-302(1)(j)-(k) (allowing HOAs to impose assessments, fines, and late fees).

¶ 17    Second, the Governing Documents allow the Board to delegate responsibilities. Under the Bylaws, the Board may "employ a manager, independent contractor, or such other employees" it deems "necessary and . . . prescribe their duties." The Rules and Regulations allow the Board to "appoint an agent for the association, the 'Community Manager,' who is authorized to handle day to day enforcement of these rules and regulations, the Declarations, the Articles of Incorporation, and the Bylaws." Thus, the power to manage "day to day enforcement" of the Bylaws implicitly includes the disputed provision regarding voting rights.[7] The power to delegate responsibilities is also consistent with CCIOA. *See* § 38-33.3-302(1)(c); § 38-33.3-306(1)(d), C.R.S. 2024.

---

[7] Contrary to Majersky's argument, the Board need not explicitly enumerate every one of the Community Manager's enforcement powers.

¶ 18    Majersky does not dispute Lopez's role as "HOA manager." Moreover, LCM established in the district court that — at all relevant times — LCM was Summerfield's agent as its property management company, and Lopez was an LCM employee.  Finally, Majersky never disputed the fact or amount of his delinquent assessment fees.  When Lopez informed Majersky that he could not vote, she did not create policy or impose new, unknown rules; acting on behalf of the Board and consistently with the Bylaws, she merely communicated that he was "in collection and can't vote." Therefore, we affirm the district court's interpretation that the Bylaws granted LCM authority to suspend Majersky's eligibility to vote in the Summerfield election.

## C.    LCM is Not a "State Actor"

¶ 19    Majersky reasserts his argument raised in the district court that LCM's conduct in restricting his voting and election eligibility violated his Fourteenth Amendment due process rights.  He also asserts, in a single sentence, that Lopez and LCM "obstructed my

right to free speech."[8]  LCM responds that the Constitution does not apply to either LCM or Summerfield as private entities.

¶ 20    In granting summary judgment for LCM on Majersky's due process claims, the district court focused on the proper construction of the Governing Documents rather than on whether the Fourteenth Amendment applied to LCM as a private entity. However, in its order dismissing Majersky's First Amendment claims, the court briefly discussed whether the Fourteenth Amendment applied to LCM.[9]  Because neither LCM nor Summerfield is a state actor to whom the First and Fourteenth Amendments apply, we affirm.

¶ 21    United States Supreme Court precedent makes clear that the Fourteenth Amendment "can be violated only by conduct that may be fairly characterized as 'state action.'"  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  The limited circumstances in which

---

[8] As discussed, *supra*, note 1, our conclusion concerning due process is dispositive of Majersky's First Amendment claims.
[9] Because LCM initially only moved for partial dismissal on the First Amendment claims, Majersky's due process claims were not before the district court at that time.  However, the court quoted *People v. Ramadon*, 2013 CO 68, ¶ 20 n.2, for the proposition that "[i]t is well settled that a constitutional due process violation can only occur by way of a state actor."

a private entity qualifies as a state actor include, for example, when (1) "the private entity performs a traditional, exclusive public function"; (2) the government has compelled a private entity's action; or (3) the government and the private entity act together. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). Here, Majersky has failed to allege facts sufficient to find that Summerfield and LCM qualify as state actors.

¶ 22    While HOAs make and enforce rules, often provide utilities, and may administer land-use regulations, they "are created by private contract" and are generally not considered state actors. Restatement ch. 6, intro. note.  As private organizations, HOAs typically do not perform traditional and exclusive public functions. *See Olson v. Belvedere Ass'n*, No. 2:14-cv-527-DK-BCW, 2015 WL 1520911, at *5 (D. Utah Apr. 2, 2015) (unpublished opinion).  Nor is an HOA a state actor merely because it contacts state officials. *See Jordan v. Simones*, Civ. A. No. 13-cv-01675-REB-MJW, 2014 WL 1133291, at *4-5 (D. Colo. Mar. 21, 2014) (unpublished opinion) (calling police does not make an HOA a state actor).  Finally, an HOA's governing documents create contractual, not constitutional,

rights.[10]  An HOA, as a private entity enforcing private rights on private property, may condition eligibility to vote, run in elections, or use recreational and social facilities on the homeowner's payment of dues.  *See* Restatement §§ 6.8 cmt. b, 6.17 cmt. a.  That is exactly what occurred here.  Because the First and Fourteenth Amendments do not apply to LCM, we affirm the district court's orders dismissing Majersky's constitutional claims.

### D.    Unpreserved Claims

¶ 23    Majersky also raises numerous claims for the first time in his opening and reply briefs.  Although we liberally construe pro se filings, "we do not address arguments made for the first time on appeal," *Minshall v. Johnston*, 2018 COA 44, ¶ 21, or issues raised for the first time in a reply brief, *In re Estate of Liebe*, 2023 COA 55,

---

[10] A division of this court recently held that HOA foreclosure notices must comply with state and federal constitutional due process requirements.  *C & C Invs., LP v. Hummel*, 2022 COA 42, ¶¶ 42, 48.  However, foreclosure presents a markedly different situation from the one before us here.  Namely, unlike foreclosure actions, eligibility to vote in and run for an HOA election does not implicate a constitutionally protected right.  *See Connecticut v. Doehr*, 501 U.S. 1, 13 (1991) (discussing due process protections in the context of liens, mortgages, and other financial encumbrances); *Flagg Bros. v. Brooks*, 436 U.S. 149, 158 (1978) (noting that state action does not apply to "private political activity . . . only state-regulated elections").

¶ 19.  Thus, we do not reach the merits on several of Majersky's claims, including

- the illegibility of LCM's Exhibits A and B;

- arguments concerning Uniform Commercial Code section 4-1-304, C.R.S. 2024 and non-existent CRE 26-26.1;

- LCM's authority to collect assessment fees;

- an argument that Majersky unintentionally agreed to LCM's motion for summary judgment; and

- allegations that LCM committed perjury in its answer brief by, among other things, mischaracterizing Lopez's role as Community Manager and failing to disclose that Lopez initially accepted his application for the Board without mentioning his overdue fees.

### E.  Attorney Fees

¶ 24    LCM requests an award of its attorney fees incurred on appeal under section 38-33.3-123(1)(c).  Citing section 13-17-102(6), C.R.S. 2024, Majersky argues that, as a pro se party, we cannot impose attorney fees on him unless he "clearly knew or reasonably should have known" this action was substantially frivolous,

groundless, or vexatious.  While creative, this argument does not account for the fact that another statute specifically provides for attorney fees, so section 13-17-102(6) does not apply.  *See* § 13-17-106, C.R.S. 2024.

¶ 25    As the prevailing party, LCM is entitled to reasonable attorney fees under section 38-33.3-123(1)(c).[11]  We exercise our discretion under C.A.R. 39.1 and remand the case to the district court to determine the amount of those fees.  Because the district court stayed its determination of attorney fees incurred in the district court proceedings, it may determine those fees on remand.

### V.    Disposition

¶ 26    The district court's order granting summary judgment for LCM is affirmed, and the case is remanded.

JUDGE JOHNSON and JUDGE SCHOCK concur.

---

[11] In a recent amendment to section 38-33.3-123(1)(c), C.R.S. 2024, the legislature added subsections (1)(c)(I) and (1)(c)(II), which substantially limit attorney fees awards to prevailing HOAs absent a homeowner's willful failure to comply with the governing documents.  *See* Ch. 422, sec. 1, § 38-33.3-123, 2024 Colo. Sess. Laws 2881.  These amendments apply to "debts accrued on or after the applicable effective date of this act," which is August 7, 2024.  Sec. 9, 2024 Colo. Sess. Laws at 2887.  Thus, the amendments apply to any attorney fees LCM accrued on or after August 7, 2024.

17